## Bickel Asphalt Paving Company, et al. v. Yeager, By et al.

### (Decided September 26, 1917.)

### Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1. Negligence—Right of Action.—A boy injured by being thrown from his bicycle while riding along the public street of a city, his wheel dropped into a hole or depression in the street in which was a loose brick negligently placed there by a paving company, may recover damages against both the city and paving company if it be shown that the city failed to perform its duty to properly maintain its street, and the hole in the street contributed, in conjunction with the loose brick negligently allowed to be and remain in the street by the paving company, to the fall and injury of plaintiff.

2. Negligence—Evidence.—The mere fact that the paving company has a contract to reconstruct a part of a street and for the purpose has placed brick and other building material on the pavement along the city street near the point of plaintiff's injury, does not relieve a complainant from the duty of showing that the brick which caused his fall and injury was the property of the paving company, and that it had negligently permitted it to be and remain in the street.

3.  Municipal Corporations—Damages.—It is the duty of a city to keep and maintain its streets in a reasonably safe condition for the use of the traveling public, and a failure to perform its duty in this regard may render it liable in damages to a traveler injured through defects therein.

4.  Pleading—Cured by Verdict.—Where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been fatal on demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively stated or omitted and without which it is not presumed that the judge would direct the jury to give or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict.

5.  Municipal Corporations—Negligence of Agents.—A city is not responsible for the negligence of its agents or servants while engaged in the construction or reconstruction of its streets, the same being a governmental function, but an injury occasioned through a defect in a street kept open to the public by the city, which does not result directly and proximately from the exercise of a governmental function, renders the city liable.

PENDLETON BECKLEY, HUMPHREY, MIDDLETON & HUMPHREY and J. W. S. CLEMENTS for appellants.

EDWARDS, OGDEN & PEAK for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming as to the City of Louisville and reversing as to the Bickel Asphalt Paving Company.

Guy C. Yeager, a boy between nine and ten years of age, residing in the city of Louisville, Jefferson county, Kentucky, while riding a bicycle on Bardstown Road, near the intersection of Sherwood avenue, fell from his wheel under a coal cart of the Pittsburg Coal Company, which ran over and severely injured him in his limbs and other parts of his body. To recover damages for the injury, he, by his father, W. C. Yeager, as next friend, instituted this action on the 18th day of February, 1915. The City of Louisville, Pittsburg Coal Company, the Louisville Street Railway Company, and the Bickel Asphalt Paving Company were all made defendants, it being alleged in the petition that the plaintiff, while riding his bicycle along the public street was injured through the failure of the Pittsburg Coal Company, its agents and servants in charge of its coal cart then being driven along the street in the same direction that the plaintiff was traveling, to exercise reasonable care for his protection after his peril had been discovered, or could

have been discovered by its said agents by the exercise of ordinary care; and that the City of Louisville had negligently failed to have and keep its street at the point of his injury in a reasonably safe condition, and that the street at said point had become and was defective, full of holes and pits, and was also covered with loose rock, brick and other debris; and that the plaintiff, while riding his bicycle ran into one of the holes in the street, which the city had negligently permitted to remain and be in the street, and was thrown from his bicycle under the wheel of the coal cart and was thereby injured; and further alleging that the Bickel Asphalt Paving Company had a contract with the city of Louisville to make repairs on the Bardstown Road within the corporate limits, and that in so doing the said paving company had placed a large quantity of brick, stone and other building material along the street adjacent to the point where he was injured, and that through the negligence and carelessness of the paving company, its agents and servants, said brick, stone and other materials had become scattered over the street, and that in riding his bicycle along said street, plaintiff struck a stone or brick thus negligently placed and allowed to remain in the street by the paving company, and was thrown from his wheel under the coal cart and injured; the petition further alleges that the Louisville Railway Company had contributed to his injury by having upon the street at said point building material which obstructed the street to such an extent that his free passage was interfered with, and he was caused to and did fall under the coal cart and received his injuries.

Each of the defendants answered denying the allegations of the petition, and pleading contributory negligence on the part of the plaintiff. Issue was joined and upon trial before a jury, the court, at the conclusion of the testimony for plaintiff, sustained a motion of the defendants, Street Railway Company and the Pittsburg Coal Company, for peremptory instructions, but overruled a similar motion as to the other defendants. This motion was again entered by the paving company and the City of Louisville, at the conclusion of all the evidence, and again overruled, and of this each complains.

The evidence for plaintiff, in substance, supports the allegations of the petition as to the City of Louisville, but is rather unsatisfactory and vague as to the paving company. The boy testified in his own behalf; he claims

that he was going to a hardware store some blocks beyond where he was injured, and was riding along at a moderate rate, coming up behind the coal cart of the Pittsburg Coal Company when a street car moving in the opposite direction approached, requiring the coal cart to leave the street car track, turning to the right, the same side on which plaintiff was riding, and thereby compelled plaintiff, who had by this time reached a point opposite the flank of the mules which were drawing the coal cart, to veer to the right also, and in so doing his wheel dropped into a hole in the street, striking a half brick which was in the hole, precipitating him over the handle-bars of his wheel and under the feet of the mules, where the oncoming wheels of the cart ran over, broke and mangled his legs and other parts of his body.

It is agreed that the street at the point of his injury was in course of reconstruction by the city, through its contractors, the asphalt company, and that the street railway company had given up one of its tracks and had arranged for the cars at that point to cross over and use the other track so as to give the contractors an opportunity to reconstruct one-half of the street, while the other one-half was being used by the public. The public was using the right hand side of the street as you travel from the city towards the country, and the coal cart was driving from the city towards the country on the right hand track, when it met the incoming street car. The plaintiff was likewise riding from the city towards the country on the right hand side of the street only a few feet from the curb. The plaintiff does not claim that he knows exactly what caused his wheel to throw him, but he insists that it must have been a brick in a depression in the street. However, the witness, who was standing on the left hand side of the street, claims to have seen the wheel strike a brick-bat and cause plaintiff to fall; another witness on the right hand side of the street thought the fall was caused by the wheel dropping into a hole; but neither of these eye-witnesses was in position to clearly see the actual situation. If the fall of plaintiff was caused or contributed to by the wheel striking the brick-bat, the evidence is not clear or convincing as to whom the brick-bat belonged or who was responsible for its presence in the street, because the telephone company had shortly before the accident been constructing a conduit and employing brick in that work along near the place where plaintiff was injured, and had left some

refuse brick on the street. The street railway company was also engaged in some construction work near this place and it used brick. There is also evidence that brick had been hauled passed that point on carts and wagons and that numerous small objects, such as brick, coal, cabbage and other things had fallen upon the street from vehicles, so that who placed or was responsible for the brick being at the point of plaintiff's injury, if any there was, is not clearly shown by the evidence.

The case against the City of Louisville is stronger because several witnesses testified to numerous holes and depressions in the street, which had been there many weeks and that one of these holes caused or contributed to the injury of plaintiff. It is the duty of the city of Louisville to keep and maintain its streets in a reasonably safe condition for the traveling public. The evidence discloses that this street was in bad repair and had been for many weeks previous, and that holes, such as the one described in the evidence, had been worn in the street at several places near the point in question, and that these holes or depressions were two or three inches deep and had been there long enough for the city, through its agents, to learn of their existence, and to cause the same to be repaired before plaintiff's injury.

It is earnestly insisted for the city, however, that its motion for judgment, notwithstanding the verdict, should have been sustained, because the petition fails to allege that the street upon which plaintiff claims to have been injured, was a public thoroughfare within the corporate limits of the city of Louisville, which it was the duty of the city to maintain. True, the petition does not allege these facts in terms, but does charge that the Bardstown Road at the point in question lies within the corporate limits and is the principal street and means of ingress and egress between the city of Louisville and the outlying country, and that it supports a heavy traffic; and further that it was the duty of the city to keep and maintain its streets in a reasonably safe condition, and that this street was defective and out of repair, full of holes and depressions at the time and for weeks previous to the injury of plaintiff. Manifestly both counsel for plaintiff and defendant in the lower court were proceeding upon the idea and assumption that the Bardstown Road, at the point in question, was a street in the city of Louisville, which it was the duty of the city to maintain, and since the city, through its contractor, the Bickel

Asphalt Paving Company, was then in the act of repairing a part of the street adjacent to that point on which the plaintiff was injured, it appears a mere quibble to insist that the motion for judgment notwithstanding the verdict should have been sustained. In the brief for appellant, City of Louisville, this language is used:

"As is well known the Bardstown Road is probably the most used roadway in the state of Kentucky, and has been so used as the medium of traffic, or passage, particularly heavy hauling, time out of mind. . . . In the summer of 1915 the appellant, the City of Louisville, let the contract for reconstructing that part of said road, above indicated, to the appellant, the Bickel Asphalt & Paving Company, as an independent contractor, and required it to reconstruct one-half of said road at alternate times, so that the public might continue to use the other half, not then being actually reconstructed. The city was forced to take this course, the only alternative being to close this important artery of commerce to the public entirely. To have shut out the public entirely would have caused very great inconvenience, not merely to the persons living along the immediate vicinity of the improvement, but to gardeners, coal merchants and other haulers of supplies or foods to, and from, the city. . . ."

"There was very considerable testimony offered in behalf of the appellee, tending to show that the part of the road then being temporarily used by the public was seamed with ruts, depressions and holes and not in good physical condition. It is manifest that this piece of roadway was not in a good condition, as otherwise the city of Louisville would have been guilty of a gross waste of public funds in reconstructing it. Common sense teaches us that roadways are not to be constructed until they are more or less run down. Common sense further teaches us that public traffic going out and in over this narrow one-half of a road, day and night, would necessarily and utterly prevent any substantial or real repair of the ruts or holes complained of, for the very simple reason that whatever material might be placed in such places would be cut out as fast as put in by passing vehicles."

The petition might have been more specific, direct and certain, but the real issue was not as to whether the street was in the city, and one which it was the duty of the municipality to maintain, but whether the street at that point was defective and out of repair and had been for such length of time as to have afforded the city op-

portunity to correct the defects; and if so, was its defective condition a proximate cause of the plaintiff's injury? The rule is, "Where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been fatal on demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively stated or omitted, and without which it is not to be presumed that either the judge could direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict." (Chitty's Pleadings; Bliss on Code Pleading.) This court, in the case of Wilson v. Hunt, Admr., 6 B. Monroe 379, stated the rule as follows:

"When the verdict can be fairly considered as establishing between the parties the very fact which should have been, but is not, precisely averred in the declaration, and especially when it clearly appears that the particular fact was understood by the parties to be the point in issue to be decided by the jury, it would be unnecessary for the ends of justice and would be more than useless to remand the case that it should again be presented for the consideration of the jury."

Measured by this rule, the motion for judgment, notwithstanding the verdict, was properly overruled.

The appellant, City of Louisville, next contends that because it was discharging a function of government in having the street reconstructed at the time and place of the injury of plaintiff, it is, therefore, not responsible for plaintiff's injury even though its agents were guilty of negligence. This contention is not tenable because the street upon which the plaintiff was riding at the time of his injury was open to the public and was not at that particular point in course of reconstruction. The contention, however, is that one-half of the street at that point was left open for the benefit of the public, while the other half was being repaired, and that the public was the beneficiary and cannot complain. It is a well-recognized rule that where a street is thrown open for public use those who travel upon it have the right to assume that it is in a reasonably safe condition, and if without fault of their own, or without knowledge of some existing obstruction, injury results, the city is liable unless the defects which caused the injury had existed for so short a time that the city officials, by the exercise of reasonable care and supervision, could not have known

of it. It is no defense for the city that out of consideration for the public and its convenience it left open a defective street. While this court has often held that the building or reconstruction of a street is a governmental function of a city and that the city is not responsible for the negligence of its agents while engaged in such work, this doctrine does not apply to the case at bar for the reason above stated.

A city may not leave open to travel by the public a defective street, and plead contributory negligence as a defense to an action for damages for personal injury where the contributory negligence consists merely of the plaintiff riding or traveling along the defective street which the city had left open for that purpose. The plaintiff Yeager was not guilty of contributory negligence in attempting to ride his bicycle along Bardstown Road at the point of his injury, because the street was left open for public travel, and he had a right to be on it at that point with his bicycle. An open street is an implied invitation to make use of it, and especially is that true in this case, it appearing the street at that particular time and place was being constantly used by vehicles of all kinds. If a city cannot repair a defective street without exposing the traveling public or some members thereof to injury, or if in making repairs on the one side of a street, the other side is rendered defective or unsafe for the use of the public, it is the duty of the city to close the street until it is made reasonably safe, and a failure to do so may render the city responsible in damages for resulting injuries to travelers. Neither can it be said that plaintiff Yeager was guilty of contributory negligence, as matter of law, when he attempted to pass the coal cart, because the evidence for plaintiff shows he had reasonable passage way. The question of whether plaintiff was guilty of contributory negligence was, therefore, properly determinable by the jury under proper instructions from the court.

The second instruction is complained of by the paving company, and this objection appears to be well taken. Upon another trial this instruction should be so reformed as to submit to the jury the question of whether or not the street became and was dangerous and unsafe for the use of the public, and this condition, if such there was, continued for such length of time as that the defendant knew, or by the exercise of ordinary care could have

known of the same in time to have removed the obstruction in the street before the injury to plaintiff.

Other grounds are relied upon by the City of Louisville for a reversal of the judgment, but a careful examination of these several grounds does not disclose any sufficient reason for such action.

The judgment is, therefore, affirmed as to the City of Louisville, and reversed as to the Bickel Asphalt Paving Company for a new trial consistent with this opinion.