## City of Catlettsburg v. Davis' Adm'r.

(Decided May 11, 1934.)

H. F. PRICE and GEO. F. GALLUP for appellant.

DYSARD, TINSLEY & PRICHARD and J. W. McKENZIE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

W. J. Davis having died of severe burns he received when an automobile in which he was riding turned over, his administrator brought this suit against the city of Catlettsburg to recover damages for such death on the ground that the overturning of the automobile had been brought about by reason of the defective condition of Louisa street at the point of the accident. The administrator recovered a judgment in the sum of $5,502, from which judgment this appeal is prosecuted.

Louisa street at and for some distance both north and south of the point at which the accident in question occurred is constructed around the side of a hill which rises directly from the west side of the street and falls abruptly from the east side. This street, which is part of United States highway No. 23, is paved with concrete. On June 30, 1931, Davis, J. J. Sutherland, and Isom Gillum were driving south on Louisa street in a five-passenger automobile. Sutherland, who had borrowed this machine, was driving, and Gillum and Davis, his guests, were seated on the rear seat. Just before reaching the point at which the accident occurred, they came up behind another car going in the same direction as they were and being driven by the Honorable George F. Gallup, city attorney of Catlettsburg. Mr. Gallup's mother was in his car with him. Sutherland decided to pass Gallup's car, and, in order to do so, of course pulled to the left and increased the speed of his car. As he came out from behind Gallup's car, there rounded a curve some 200 feet away a car coming towards the Gallup and Sutherland cars. Up to this point, there is no material dispute in the evidence. Right along where Sutherland was undertaking to pass Gallup's car, the paving of the street was broken. It was full of holes, but the evidence is in sharp dispute as to the depth of these holes; the testimony for the Davis estate being that the holes were from three to eight inches in depth and so numerous and so close together as to cause automobiles, and especially this car, to bounce, rock, jolt, jar, and rattle, whereas the evidence for the city is to the effect that these holes were just small places in the pavement caused by the scaling of the surface coat of the concrete. There can be scarce doubt but that a large section of this concrete pavement on the downhill side of the road had broken and tilted in the direction of the slope of the hill, caused, perhaps, by the washing of the ground from beneath the base of the concrete road with no support left for the concrete slab that formed the roadway. This left the road on the downhill side in a sloping condition. The testimony for the Davis estate is to the effect that, when the Sutherland car pulled out from behind the Gallup car, it began to bounce up and down as though it were hitting into a series of holes. Gillum testified expressly that the car ran into these holes and thereby caused Sutherland to lose control of it, as a result of which loss of control the

car plunged over the side of the road, down the hill, and turned over. On the other hand, the testimony for the city is to the effect that Sutherland undertook to pass the Gallup car at a point quite a little distance from where these breaks, be they small or large, were in the pavement; that, as Sutherland tried to pass the Gallup car, the rear portion of his car caught on Gallup's rear bumper, as a result of which, coupled with the great speed at which Sutherland's car was going, Sutherland's car was deflected and ran over the side of the road and down the hill. Thus it will be seen that the issue was sharply drawn as to whether the holes in the road caused Sutherland's car to plunge over the hillside or the collision with Gallup's car caused it to do so. It is true that Gillum, who testified that the car was caused to plunge over the hill because of defects in the road, testified that, if the Sutherland car hit the Gallup car, he did not know it; yet it is perfectly plain from reading Gillum's testimony that its meaning was that, even if Sutherland's car did hit the Gallup car, the cause of its plunging over the hillside was the running into the holes in the road, and that these holes were at least a concurring cause of the accident which followed. After the car plunged over the hillside, it turned over and a fire broke out on the inside of the car. There were two jugs inside the car, and it is the theory of the city that these jugs were full of alcohol, and there is the claim that at the time of this accident all three occupants of the car were intoxicated and that the accident was caused, at least in part, by the intoxication of the driver Sutherland. On the other hand, it is the theory of the Davis estate that the men were not intoxicated and that one of these jugs held kerosene and the other gasoline. The men were taken from the car; Sutherland being at that time so badly burned that he died within a few hours. Davis was badly burned too, but survived for about two months. Gillum recovered.

As grounds for reversal, it is first argued that the city was entitled to a peremptory instruction, and, failing in that, that the verdict is flagrantly against the evidence. The resume that we have given of the case indicates a lack of merit in these contentions. It is true that Mr. Gallup and his mother and two of the occupants of the car which was approaching the Sutherland and Gallup cars from the opposite direction testified that the Sutherland and Gallup cars struck one another.

On the other hand, the three Pucketts, who were seated on the front porch of their house built on the lower side of the road, testified to the bouncing up and down of the car as though it were hitting holes, and Gillum testified expressly that the holes caused the car to run over the hillside. . Gallup did testify that the collision, if there was one, between him and the Sutherland car, occurred on the road before the bad places in the road were reached. Conceding such collision to have taken place as Gallup testified, the jury were yet warranted in believing that the bad places in the road contributed as a concurring cause but for which Sutherland's car would not have run off the road and down the hillside. There was ample evidence to take the case to the jury and to sustain its verdict. City of Louisville v. Bridwell, 150 Ky. 589, 150 S. W. 672; Bickel Asphalt Pav. Co. v. Yeager, 176 Ky. 712, 197 S. W. 417; City of Providence v. Young, 227 Ky. 690, 13 S. W. (2d) 1022; City of Henderson v. Sizemore, 104 S. W. 722, 31 Ky. Law Rep. 1134.

It is argued by the city that the evidence conclusively shows that Sutherland was intoxicated at the time of this accident and that his intoxication brought it about. No one testifies that they smelled any liquor on Sutherland's breath before or after he was taken from the burning car. The nurse at the hospital to which he was soon taken testifies that, although he vomited freely at the hospital, there was no indication of his having imbibed any liquor at least within twelve hours previous to his having been brought to the hospital. The witnesses do say that Sutherland cursed very freely, but this could well be attributed to the extreme pain in which he found himself. Nicety of expression is not always to be expected under such circumstances. Even if the jugs in the car did contain moonshine whisky, yet, as pointed out in the companion case to this, City of Catlettsburg v. Sutherland's Adm'r, 247 Ky. 540, 57 S. W. (2d) 512, 516, where the negligence relied upon was different from that relied upon in this case:

"It requires no argument to demonstrate that, even if it had been admitted that decedent [Sutherland] was unlawfully transporting liquor, he would thereby become an outcast and forfeit his right as a citizen to the protection of the laws for the preservation of the members of society and the protection

of their rights. Neither would the fact of his intoxication be a defense, but only a circumstance to establish contributory negligence on his part, and therefore admissible in evidence for that purpose.''

Gillum positively testified that neither he nor his companions had been drinking. The issue of intoxication of Sutherland being sharply in dispute, it was a matter to go to the jury on the question of contributory negligence, and did not warrant a peremptory instruction for the city as it argues. Nor can we follow the nebulous argument of the city that there was no evidence that the overturn of the car had any causal connection with the fire which ensued. Even though it be conceded the jugs did contain moonshine whisky, that of itself did not establish the fact that the occupants of the car were intoxicated.

It is next contended that there were errors in the instructions in that instruction No. 1 failed to incorporate the idea that the city must have known, or by the exercise of ordinary care could have known, of the defective condition of Louisa street, if it was defective, in time to have repaired it by the exercise of ordinary care. The trouble with this contention is that the evidence was undisputed that the conditions which existed at the time of the accident had existed for over a year prior thereto and that one of the commissioners of the city of Catlettsburg drove daily by and over this place. Therefore the complained of omission in the instruction was not prejudicial. As said in the case of Board of Councilmen v. Downey (Ky.) 118 S. W. 284, 285:

"The city engineer and others of the city officials likewise, had knowledge of this defective condition brought home to them, and, while there is no testimony showing that any of said officials knew of the existence of the particular hole which caused the breaking of the axle, still they all knew that the entire street at that point was in a dangerous, unsafe, and defective condition. It appears that its condition was so bad at that time and place that three other vehicles were either stalled or broken down at almost the same point where the accident to appellee's buggy occurred. There is no proof in the case to the contrary. This evidence as to the existence of these defects in the street at that point for such a length of time being uncontradicted, the

court was warranted in treating it as a fact admitted, and appellant was certainly not prejudiced because the instruction failed to state that appellant was entitled to be given a reasonable time in which to make the needed repairs after knowledge of the defective condition of the street had been brought home to the city."

And in the case of City of Louisville v. Keher, 117 Ky. 841, 79 S. W. 270, 272, 25 Ky. Law Rep. 2003:

"Yet the obstruction had thus existed in the street, according to the uncontradicted testimony, with the knowledge of the officers of the city, for several weeks, and under the evidence the city was at least not prejudiced by the failure of the court to submit to the jury the question whether the city had notice of the obstruction."

It is further argued that the instruction on contributory negligence was faulty, but it fully covered this issue and incorporated as far as the city was entitled to have incorporated the doctrine of the duty of a guest in an automobile as we have it in this state. There is no merit in this contention.

It is next contended that it was error to allow the witness Eddy to testify as an expert when he had not qualified as such. The trouble about this contention is that Eddy did not testify as an expert but only to facts as he saw and knew them after viewing the situation and condition of the street at the time when he made certain photographs which were introduced in evidence.

It is next argued that the court erred in connection with permitting the witness Tanner to go on the stand. To properly get at this contention, a short statement of the facts which give rise to it must be given. Gillum had testified when on the stand that one of the jugs contained a gallon of kerosene which had been bought that day at a certain filling station in Ashland. It will be remembered that the city was contending that these jugs contained alcohol. During the progress of the trial, the city sent for the manager of this filling station and had him come to Catlettsburg. After interviewing him, the city's counsel permitted him to go. Plaintiff's counsel, thinking they "smelt a mouse," stated in open court that they would like a little time to get the keeper of this filling station, as they understood the filling station

kept a record of the sales of kerosene, and they were informed that the record of this station showed that the filling station had sold a gallon of kerosene on that day. A colloquy broke out between counsel on both sides, at the close of which counsel for the city demanded that the manager of the filling station be brought by the appellee into court. He was. However, he was examined on his voir dire outside the presence of the jury. It developed that the filling station did keep records of the sale of kerosene and that the records disclosed that, on the day Gillum claimed he and his companions bought a gallon of kerosene at this station, one gallon of kerosene and no more was sold that day. As Tanner did not make the sale, and so did not know to whom the kerosene had been sold, and as the record did not disclose to whom it had been sold, the court held that Tanner was not a competent witness to establish the sale of this kerosene. However, in order to disabuse the jury's mind of any idea that the examination of this witness on his voir dire had failed to establish that any kerosene had been sold by the filling station that day, the court permitted counsel for plaintiff to put Tanner on the stand and to ask him the question as to whether or not any kerosene had been sold that day. Of course the city promptly objected and the court promptly sustained such objection. The city complains that this action on the part of the court in permitting the witness to go on the stand as thus stated was highly prejudicial. It may well be doubted whether the court did not err in excluding this testimony of Tanner, as it may be argued with much to support such argument that Tanner's testimony tended to corroborate Gillum's testimony and should have been received for what it was worth. Gillum had testified that he and his companions had bought a gallon of kerosene at this filling station on the day that the records of the filling station indicated only one gallon had been sold. The filling station records were offered to corroborate Gillum and perhaps they did. But it is not necessary to decide that question here. It is certain that the city had invited the situation which resulted, for clearly, after having demanded in open court that the witness be brought there and the witness having been brought to court, the jury, but for the procedure the court allowed, would have received the impression that Tanner would not testify that any kerosene had been sold that day as the col-

loquy brought on by the city in open court indicated he would. Under the circumstances we do not regard what happened as being error.

It is also argued that counsel for plaintiff was guilty of misconduct in cross-examining a witness who had testified concerning the cursing of Sutherland. This witness had been introduced to establish that Sutherland was drunk because of the cursing. It is patent that the cross-examination which brought out the terrible suffering of Sutherland was for the purpose of establishing that the cursing could have been as justly attributed to the condition of Sutherland as to his being intoxicated. If there were any connotations to the evidence, they were such as the defendant had in the very nature of things to bear.

It is also complained that counsel for plaintiff was guilty of misconduct in his final argument, but we have examined that argument and can find no substantial basis for the complaint made.

Other errors are relied upon, but they are of such minor nature and of so little consequence that they merit no discussion here beyond the statement that, conceding arguendo that they were errors, they were not of a prejudicial nature.

Finding no error prejudicial to the appellant's substantial rights, the judgment is affirmed.