**J. W. TERRY et al., Appellants,**

v.

**Kate TIMBERLAKE, Appellee.**

Court of Appeals of Kentucky.

June 16, 1961.

Petition for Rehearing Denied
Sept. 29, 1961.

Hamm, Taylor & Milby, London, for appellants.

Calvert C. Little, London, for appellee.

MONTGOMERY, Judge.

Kate Timberlake recovered judgment in the sum of $6,000 for injuries sustained in a fall on the premises of J. W. Terry and his wife. On appeal, appellants contend that the appellee was a licensee and that she was guilty of contributory negligence or assumed the risk as a matter of law. The sufficiency of the evidence to support the verdict is also questioned.

On the morning of August 16, 1958, appellee, then sixty-five years of age, fell on

the premises of appellants and broke her leg. Appellants are related to appellee as sister and brother-in-law. At the time of the fall, appellee, a resident of Florida, had been visiting in appellants' home in London for six weeks. She had visited in appellants' home for several weeks each summer since 1936. During the years 1941 to 1949, she had resided in London, during which time she continued to visit in appellants' home regularly.

The fall occurred near the entrance to the garage at appellants' home. The driveway into the garage was composed of two concrete strips on which to drive. At the garage entrance, the space about two and one-half feet deep between the strips was occupied by nine flat sandstone rocks of different sizes laid in three rows of three each and used as a walkway. The rocks were embedded in the ground with weeds and grass growing between them. They protruded slightly above the level of the ground, the concrete strips, and the garage floor, all of which is shown by photographs. The testimony indicates that the rocks had been there since about 1938 and that appellee, by reason of her visits, was familiar with the walkway, as well as with a similarly constructed rock walkway leading from the residence to the garage.

Prior to her fall, appellee had accompanied her sister in her sister's car to another place in London. Upon their return as appellee walked around the rear of the car at the entrance of the garage, she fell and sustained her injury.

The theory of appellee's case is that rain had made the stones slick and soft, thus causing them to crumble when she stepped on them, resulting in her fall. Appellants' liability is sought to be predicated on their alleged knowledge of a hidden peril and a failure to disclose it to appellee.

Appellee was a social visitor in the home of appellants at the time of her fall. As such, she was a licensee, occupying the same status as a member of appel-

lants' household, and was expected to take the premises as the appellants used them and was not entitled to expect that they would be prepared for her reception or that precautions would be taken for her safety in any manner in which appellants did not prepare or take precautions for their own safety or that of members of their family. No duty was owed to the appellee by appellants other than that of not knowingly letting her come upon a hidden peril or willfully or wantonly causing her harm. Tharp v. Tharp, Ky., 346 S.W.2d 44, and collected authorities therein; Prosser, Torts, 2nd Ed., Chapter 15, Section 77, pages 445, 447.

The question is thus narrowed to a consideration of whether appellee's fall was caused by a hidden peril of which she should have been told.

Only the testimony of appellee is enlightening as to the cause of the fall. On direct examination, she said: "I * * * stepped on those stones or a stone and it gave way with me and that is when I fell." She further testified that she did not stumble on the stones and did not know exactly what stone or rock "gave way" with her. On cross-examination, she said that two weeks before the trial at her counsel's request she had examined the stones after a rain and had "found it to be uneven, they were not firmly placed in the ground and they were wet and they were crumbling and slick on top." Her fall had occurred about eight months previously.

In her deposition taken in discovery less than thirty days before the trial, appellee testified that the rocks were not loose in any way and that she did not stumble. When she was asked, "What caused you to fall?" appellee answered, "I suppose the wet rock." Her response to the inquiry, "Did your foot slip?" was "I could not tell you * * *. All I know is I fell." This deposition was the only testimony offered in behalf of appellants.

To show knowledge of the claimed hidden peril, both appellants were called as if

under cross-examination to testify in behalf of appellee. Appellee's sister said that she (Mrs. Terry) had fallen on the rocks in the walkway leading from her house some two or three years before, but when asked what caused her to fall, answered: "I don't know whether I slipped or the rock turned with me. I couldn't say." Referring further to the rocks, she said: "We knew they were slippery when we walked on them." She testified that they would crumble when wet. Her husband corroborated her statement about the condition of the rocks when wet.

The testimony of appellee's sister concerning her fall has no significance as revealing to her and her husband the supposedly inherent danger in the wet sandstone rocks. Her statement did not attribute her fall to such condition. Appellee's statement as to the cause of her fall fails in the same respect. It is true that each, as well as appellee's brother-in-law, testified that examinations subsequent to the falls revealed that the rocks when wet were slippery and would crumble when stepped on, but no one said that this was the cause of either fall. It seems somewhat odd that two walkways constructed of such stones would have been permitted to remain in continuous use since 1938 if they had been dangerous as stated. Such continued use by appellants refutes their statements as to their dangerous condition. During all of this time, by reason of her many lengthy visits, appellee had ample opportunity to observe and discover the condition of the rocks when wet. Two photographs of the place where appellee fell do not reveal that the rocks have crumbled during the years of their long use, and no attempt was made to point out on any particular rock where it had given way or crumbled so as to have caused appellee's fall.

In reviewing the testimony as to its sufficiency to sustain the verdict, there is no direct and positive statement fixing the cause of appellee's fall. See Lane v. Cardwell, Ky., 306 S.W.2d 290, 61 A.L.R.2d 202. The attempt to attribute it to a hidden peril or concealed danger not made known to appellee must be considered in the light of the testimony of appellee's relationship to the appellants, her lengthy visits, and the fact that she returned from the hospital to their home on September 29, 1958, and remained there continuously except for short visits to her son's home through the trial date, June 5, 1959. The complaint was filed December 30, 1958. Appellee stated that she had not discussed the lawsuit with appellants with whom she was then living.

The evidence does not show that appellants violated any duty owed to appellee as a licensee and is not considered of sufficient probative value to sustain the verdict. The motion for judgment notwithstanding the verdict should have been sustained. It is unnecessary to discuss contributory negligence or assumed risk.

Judgment reversed with direction to enter judgment for the appellants.

BIRD, C. J., not sitting.