COMMONWEALTH of Kentucky DEPART-
MENT OF HIGHWAYS, Appellant,

v.

GENERAL & EXCESS INSURANCE
COMPANY et al., Appellees.

Court of Appeals of Kentucky.

March 23, 1962.

John B. Breckinridge, Atty. Gen., H. D.
Reed, Jr., Asst. Atty. Gen., John J. Black-

burn, Dept. of Highways, Frankfort, for appellant.

J. D. Ruark, Morganfield, Willie M. Deep, Henderson, for appellees.

MOREMEN, Judge.

This is an appeal from a judgment of the Union Circuit Court which confirmed an award of the Board of Claims of Kentucky for damages sustained by appellee Clark as the result of alleged negligence of the Commonwealth in maintaining U. S. Highway No. 60 at a point near Sturgis.

On December 9, 1957, Clark was operating a truck on U. S. 60 when an automobile being driven by Robert M. Dennis approached from the opposite direction. The vehicles collided. Dennis was killed and Clark was severely injured.

Clark had in effect a policy of insurance under which he was paid property damage. The insurance carrier has been subrogated to the amount of its payment and is a party to this litigation.

The basis of appellees' claim was the averred neglect of the Department of Highways in permitting a large hole or ditch to form in the lane of traffic being used by Dennis at the time of the accident. The break in the highway was described by various witnesses who appeared at the scene of the accident soon after its occurrence. Some of them lived in the vicinity and were familiar with the defect. Their descriptions of the fault were not identical, but we draw a composite picture from the testimony that it was about seven feet long, two feet wide and from two to six inches deep. It extended from the edge of the road to near the center line.

Clark, the only eyewitness who survived, testified that as the cars approached their meeting point each car was in its own lane. It was raining but the visibility was good. And then:

"Q. But as you approached each other, tell the court in your own words what took place? A. As the automobile got in about three car lengths of me, and came right straight into me, something knocked him right straight into me.

\* \* \* \* \* \*

"Q. Prior to that had that car been on its own right-hand side of the highway? A. Yes.

"Q. Where were you at that particular time? A. I was on my side of the road."

Clark lost consciousness at the time of the impact. He later returned to the scene and identified a patched place in the road as the point where the automobile began to cross from its side of the road and into his truck. The evidence disclosed that the break was repaired by the Department of Highways a day or two after the accident. It was also proved by several witnesses that the break had existed for a month or more before the accident occurred.

The Board of Claims found that the Commonwealth was negligent in maintaining the highway and concluded that the Commonwealth was "negligent in failing to take reasonable precautions to protect the traveling public from injury as the result of said defect in the highway." Fact findings of the Board may not be disturbed by courts when supported by substantial evidence. Commonwealth v. Mudd, Ky., 255 S.W.2d 989.

We are confronted nevertheless with the question as to the extent of liability of the Commonwealth in connection with defects which from time to time have appeared and will appear in the highway. KRS 44.120 reads:

"An award shall be made only after consideration of the facts surrounding the matter in controversy, and no award shall be made unless the board is of the opinion that the damage claimed was caused by such negligence on

the part of the Commonwealth or its agents as would entitle claimant to a judgment in an action at law if the state were amenable to such action."

The difficulty one has in considering claims against the Commonwealth lies in the fact that in the development of law, the sovereign for so many years was exempt from liability for negligence in the maintenance of its roads and it was only possible to sue the Commonwealth after the Legislature had given special permission so to do. (See Taylor v. Westerfield, 233 Ky. 619, 26 S.W. 2d 557, 69 A.L.R. 482.) However, the removal of this disability and the establishment of the Board of Claims in 1948 have compelled a readjustment of thinking on this matter.

■ Municipal corporations under common law long have been liable for damages resulting from defective public ways. City of Louisville v. Haugh, 157 Ky. 643, 163 S.W. 1101. This liability arose not from a statute, but from the common law and it sometimes has been termed an "illogical exception" to the general rule which does not permit actions against municipalities for negligence in discharging duties imposed upon them for the sole benefit of the public. McQuillin, Municipal Corporations, Vol. 19, Sec. 54.03.

We believe the law applicable to municipal corporations in connection with their duties to maintain streets and the liability which attaches when there is a neglect of those duties offers a fair analogy and precedent for application to the state's duties to maintain highways (since sovereign immunity has been waived) and the subsequent penalties and liabilities when it fails to perform those duties.

■ Under municipal law it is not enough merely to show that a defect in the street exists. Notice to the city, either actual or constructive, must be shown. We have the rule that if the defective condition or danger which caused the injury had existed for such a period of time that the au-thorities, by exercise of ordinary care and diligence, must have known of its existence and could have guarded the public against injury because of it and failed to do so, notice will be imputed to the authority charged with the maintenance of the highway. City of Danville v. Vanarsdale, 243 Ky. 338, 48 S.W.2d 5; City of Richmond v. Hill, 195 Ky. 566, 242 S.W. 867.

In Bell v. City of Henderson, 74 S.W. 206, 24 Ky.Law Rep. 2434, it was said:

"It (city) is not liable for injuries caused by defective streets in the absence of actual notice of such defect, or unless they have existed so long that notice or knowledge thereof should be imputed to it; and notice should not be imputed where the defects are of recent origin, and particularly where they are concealed in any wise. Whilst generally the jury should determine, as a question of fact, whether a city has such notice, yet, where the facts are undisputed, and but one reasonable inference can be drawn from them, it becomes a question for the court to decide."

■ There was sufficient probative evidence produced to support the Board's finding that the hole had been in the road for a month or longer, and the Board's conclusion that the break created a dangerous condition of which the Commonwealth "could have or should have had knowledge if it had exercised reasonable care in inspecting and maintaining the highway" was proper.

■ Finally we are confronted with the question of whether the break in the road, which has been described, was of such nature that the state should be held responsible. It is common knowledge that holes and breaks often appear in streets and highways through wear, erosion, freezing and other means. It was pointed out in Commonwealth of Kentucky v. Young, Ky., 354 S.W.2d 23 (February 9, 1962) that those in control of roads are not insurers of the safety of the traveling public, but

there we held that those charged with the maintenance of highways are under duty to safeguard the traveling public while a highway is being repaired, and placed upon them the duty to observe proper precautions by the erection of suitable barriers or warning devices. It seems to us that the same duty devolves upon the Department of Highways to repair a hole which might cause the highway to become dangerous or, at least, to erect devices to guard or warn against the danger. See McQuillin, Municipal Corporations, Vol. 19 Sec. 54.90.

The Board of Claims should have the right to use its sound discretion in determining whether, under the circumstances of the case, the break or hole was of a type that made the highway dangerous to the public for travel, as we have permitted a jury to do—under proper instructions— in cases involving municipal responsibilities.

In City of Catlettsburg v. Davis' Adm'r, 255 Ky. 382, 74 S.W.2d 341, Davis died when an automobile in which he was riding turned over and his administrator brought suit against the city on the ground that the over-turning of the automobile had been brought about by reason of the defective condition of the street at the point of the accident. This street which was a part of U. S. Highway 23 was paved with concrete. Sutherland was driving the car in which Davis was a guest. This car undertook to pass another car. The opinion gives this description of the circumstances surrounding the accident:

"Right along where Sutherland was undertaking to pass Gallup's car, the paving of the street was broken. It was full of holes, but the evidence is in sharp dispute as to the depth of these holes; the testimony for the Davis estate being that the holes were from three to eight inches in depth and so numerous and so close together as to cause automobiles, and especially this car, to bounce, rock, jolt, jar, and rattle, whereas the evidence for the city is to the effect that these holes were

just small places in the pavement caused by the scaling of the surface coat of the concrete. There can be scarce doubt but that a large section of this concrete pavement on the downhill side of the road had broken and tilted in the direction of the slope of the hill, caused, perhaps, by the washing of the ground from beneath the base of the concrete road with no support left for the concrete slab that formed the roadway. This left the road on the downhill side in a sloping condition."

There was some evidence to the effect that the Sutherland and Gallup cars struck one another which may have caused the accident. Other witnesses' testified that when passing the Sutherland car bounced up and down as though it was hitting holes and that the holes caused the car to run over the hillside and overturn.

The court held:

"Conceding such collision to have taken place as Gallup testified, the jury were yet warranted in believing that the bad places in the road contributed as a concurring cause but for which Sutherland's car would not have run off the road and down the hillside. There was ample evidence to take the case to the jury and to sustain its verdict. City of Louisville v. Bridwell, 150 Ky. 589, 150 S.W. 672; Bickel Asphalt Pav. Co. v. Yeager, 176 Ky. 712, 197 S.W. 417; City of Providence v. Young, 227 Ky. 690, 13 S.W.2d 1022; City of Henderson v. Sizemore, 104 S. W. 722, 31 Ky.Law Rep. 1134."

We have concluded that the circuit court was correct in affirming the award of the Board. Subsection (2) of 44.140 provides that on appeal no new evidence may be introduced except as to fraud or misconduct of some person engaged in the hearing before the Board; that the court sitting without a jury should hear the cause on the record before it and dispose of the appeal in a summary manner, being limited to de-

termining: "Whether or not the board acted without or in excess of its powers; the award was procured by fraud; the award is not in conformity to the provisions of KRS 44.070 to 44.160; and whether the findings of fact support the award."

The above subsection does not grant to the circuit court the right to substitute its judgment for the judgment of the Board in the determination of whether the highway was in a dangerous condition, but merely to see whether the findings of fact supported the award. However, we do not construe the words "whether the findings of fact support the award" to mean that the written findings of fact, which the Board placed in the record, are binding, whether or not they are supported by evidence of substance, but to mean that if the findings of fact are supported by substantial evidence, they are conclusive and the award made is supported by law, or, as said in Shrader v. Commonwealth, 309 Ky. 553, 218 S.W.2d 406, the finding and award of the Board of Claims, if supported by substantial evidence, are conclusive. See also Commonwealth v. Mudd, Ky., 255 S.W.2d 989.

We believe the circuit court was correct in its judgment sustaining the award of the Board and the judgment is therefore affirmed.

STEWART, C. J., dissenting.

MONTGOMERY, Judge (dissenting).

The majority opinion does not prescribe any proper standard of care by which the negligence of the Department of Highways in the maintenance of highways may be determined, and it holds the Department to a higher standard of care than would be required of an individual under the same circumstances. See KRS 44.120. Inasmuch as the right to recover for the negligence of the Department or its employees exists because of the waiver of governmental immunity, it is felt that such right of recovery should be limited strictly.

The Department of Highways is charged with maintaining approximately 20,000 miles of highway. It is partially responsible for the maintenance of an additional 12,000 miles of highway. These 32,000 miles of highway extend the length and breadth of the state, through urban and rural areas, up hollows and down creeks. Many miles are in isolated areas. The character of highways ranges from four-lane interstate highways with beautiful median strips to gravel roads filled with "chug holes." The surfaces vary from excellent and smooth through broken concrete, worn out blacktop, to rock and gravel. The surface or shoulders may be made hazardous by weather conditions. See Commonwealth Dept. of Highways v. Brown, Ky., 346 S.W.2d 24; and Commonwealth v. Justice, Ky., 351 S.W.2d 507.

In addition to the variations in highway conditions, there is the problem of personnel and money with which to maintain the system. Should the standard of care be set at the highest degree and then it be held that anything less is a failure to maintain properly and thus render the Commonwealth liable for any injuries resulting? Manifestly, it would be utterly wrong to say that the Commonwealth is liable for injuries suffered by a motorist received by reason of a rut on a big rock in a gravel road. The majority opinion holds the Department liable for failure to maintain U. S. 60 at a point near Sturgis because of a break in its surface. If this creates liability, how can any other rut, break, or rough condition of the surface be distinguished, or must the Department of Highways be held liable for all injuries resulting therefrom? Again, I say there is no proper standard of care prescribed.

Further, the effect of the majority opinion is to hold the Commonwealth liable for a greater standard of care than is required of an individual, contrary to KRS 44.120. The operator of a motor vehicle is priv-

ileged to use the highway by reason of the exercise of licenses granted by the Commonwealth. It is the duty of the operator to drive with due regard to highway conditions. Atlantic Greyhound Corp. v. Franklin, 301 Ky. 867, 192 S.W.2d 753. In this respect, the analogy of a social visitor in the home, who in law is a licensee, is pertinent. There is no duty owed by the home owner to the licensee other than that of not knowingly letting one come upon a hidden peril or willfully or wantonly causing one harm. Terry v. Timberlake, Ky., 348 S.W.2d 919.

In Commonwealth v. Young, Ky., 354 S.W.2d 23, the latter rule, in effect, was followed. Recovery was allowed for a hidden defect in the blacktop which was known to the Department of Highways but which was not apparent to the motor vehicle operator. I have no quarrel with such holding, but do not think that the Commonwealth's liability should be extended.

Recovery against the Commonwealth is permitted because of its waiver of governmental immunity. Such liability should be limited strictly.

For these reasons I respectfully dissent. I have purposely avoided any discussion of the more narrow field of proximate cause, which also is a problem.

STEWART, C. J., joins in this dissent.