RENDERED: MAY 16, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0794-MR

PAMELA WHITSETT                                            APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE JENNIFER BRYANT WILCOX, JUDGE
ACTION NO. 22-CI-001279

LOUISVILLE & JEFFERSON
COUNTY METROPOLITAN SEWER
DISTRICT ("MSD")                                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CHIEF JUDGE THOMPSON; EASTON AND A. JONES, JUDGES.

EASTON, JUDGE: Pamela Whitsett ("Whitsett") appeals from the Jefferson

Circuit Court's Order granting Summary Judgment to the Appellee, Louisville &

Jefferson County Metropolitan Sewer District ("MSD"). Whitsett was injured

when her right leg went into a hole covered by an allegedly loose sewer cleanout

cover plate ("plate") in her driveway. The circuit court held that Whitsett was unable to show that MSD had actual or constructive notice that the plate was loose prior to Whitsett's fall. As a result, MSD was entitled to summary judgment. Having reviewed the record and the applicable law, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

In December 2021, Whitsett was walking along her paved driveway to get her mail. Suddenly, her right leg slipped into a small hole, which had been covered by the plate. Whitsett did not see the plate or the hole because it was covered by mud and leaves. Her right leg, up to about her knee, went into the hole, causing her left leg to "corkscrew" and fracture in several places below her knee. Whitsett spent eight days in the hospital and then spent time in a rehabilitative facility, followed by physical therapy.

One of the neighbors who came to help Whitsett on the day of her fall was an employee of the Louisville Water Company ("LWC"). He reported the fall to an LWC claims investigator, who determined that the hole and plate were not assets of LWC. The LWC investigator then contacted MSD to tell them about the plate and the fall. Initially, MSD denied ownership of the plate because it did not appear on its map of its assets or in its records. But upon further investigation, it was determined the plate belonged to MSD.

Whitsett filed suit against MSD alleging negligence "by failing to make sure its sewer line cover plate was properly secured, and in allowing and maintaining a defective sewer line cover plate that could not be properly secured, in order to avoid injury to Whitsett and others foreseeably subject to injury by reason of this hidden, defective and dangerous condition that was under MSD's ownership and control."[1]

Significant discovery ensued. Several depositions were taken, including those of Whitsett and two MSD representatives. These representatives confirmed that they could find no record of this plate. Yet the plate contained MSD's insignia, indicating MSD installed it, even if no record of the installation could be located. MSD also had no record of any maintenance ever being performed on the plate, although there was a record of maintenance of a nearby catch basin (also located on the property where Whitsett lived) and a manhole cover in the street in front of Whitsett's residence.

MSD filed a motion for summary judgment arguing that Whitsett was unable to produce any affirmative evidence that MSD had actual or constructive knowledge of the alleged dangerous condition of the loose plate. MSD further argued that the Claims Against Local Governments Act ("CALGA") barred

---

[1] Complaint, Paragraph 7, Record at Page 2.

Whitsett's claims. The circuit court heard oral arguments and then granted summary judgment to MSD on both of the asserted grounds.

First, the circuit court held that Whitsett had to show affirmative evidence that MSD had actual or constructive knowledge that the plate was loose in order to prove negligence. Because Whitsett was not able to make that showing, MSD could not be found liable for Whitsett's injuries. Additionally, the circuit court determined that MSD was immune from liability by CALGA under these circumstances. Whitsett has abandoned the CALGA-related claim on appeal. *See Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004) (failure by an appellant to address an argument in her brief waives the argument).

**STANDARD OF REVIEW**

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (citations omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer

to the trial court's decision and will review the issue *de novo*." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

## ANALYSIS

Whitsett argues the circuit court erred in granting summary judgment to MSD. She believes that the circuit court did not view the evidence in the light most favorable to her, as there is no evidence that anyone other than MSD ever touched the plate. She claims an inference that MSD must have failed to properly secure the lid when it was installed. In the alternative, Whitsett argues MSD should have constructive notice imputed to them because the plate was heavily covered in debris, somehow indicating the plate had been unsecured for a long period of time.

Although Whitsett has waived her argument that MSD is not immune under CALGA, it is important to discuss the parameters of CALGA which the circuit court applied to distinguish this argument from the other argument still advanced by Whitsett. KRS[2] 65.2003 states:

> "[A] local government shall not be liable for injuries or losses resulting from . . . (3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to: . . . (e) Failure to make an inspection.

---

[2] Kentucky Revised Statutes.

-5-

Yet, the conclusion of the statute makes clear that "[n]othing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties." *Id.*

A significant part of Whitsett's claim was that MSD did not even know the plate in question was there, and therefore, they never inspected it or maintained it. She points to the undisputed fact that the plate was covered in caked-on mud and debris as evidence that no one had touched the plate in quite some time. Whitsett said this regarding how she believed MSD to be negligent:

> Q: What do you think MSD did wrong or what it should have done differently?
>
> A: Well, they should have secured the cap.
>
> Q: Okay.
>
> A: You know, because that's very dangerous. A child could fall in there.
>
> Q: Okay. Now, I just want to be clear on a few things. Earlier you said you don't know how it became loose. That remains true now, right?
>
> A: Yes.
>
> Q: Okay. So are you saying that they should have inspected to see if it was loose, and if it was loose, they should have tightened it?
>
> A: Yes.

Q: Is that your gripe?

A: Yes.

Q: Okay. Anything else?

A: No.[3]

Whitsett's deposition testimony indicates her position was partly that MSD should be responsible for inspecting all its assets to ensure they are not dangerous. The MSD representative's testimony was that they have a regular inspection and maintenance schedule for some integral parts of the sewer system, such as catch basins, but only within a specific geographic area. His testimony was unequivocal that they do not inspect other parts of the system, such as these plates, unless they have been informed of an issue. There are simply too many plates in Jefferson County, and MSD does not have sufficient staff to perform frequent inspections on every asset.

We are aware of a recent but not yet final decision[4] by the Kentucky Supreme Court which holds that, while MSD is entitled to claim immunity under CALGA, immunity is not afforded when the claim is based upon a dangerous condition MSD created and maintained, specifically by not providing a grate to

---

[3] Pamela Whitsett Deposition, July 11, 2023, Page 138.

[4] *Louisville and Jefferson County Metropolitan Sewer District v. Albright*, No. 2023-SC-0079, 2025 WL 890812 (Ky. Mar. 20, 2025).

cover the entrance to a drainage pipe large enough to sweep away a person. In those circumstances, the utility had notice of the dangerous condition from the beginning.[5] This recent case follows established law that MSD may be liable for negligent design and maintenance of a dangerous condition once it chose to create the condition. *See City of Frankfort v. Byrns*, 817 S.W.2d 462 (Ky. App. 1991).

The present case is distinguishable because it deals with an initially non-dangerous and common condition that may have become dangerous when the plate came loose. As we shall see, the duty of maintenance in this case is qualified by notice of the changed condition. Whitsett has no evidence of how long this plate was loose. Essentially then, Whitsett's only remaining claim is for negligence in not securing the plate when it was originally installed.

For a "cause of action based on negligence, a plaintiff must establish a duty on the defendant, a breach of the duty, and a causal connection between the breach of the duty and an injury suffered by the plaintiff." *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436-37 (Ky. App. 2001). "The absence of proof on any one of the required elements is fatal to a negligence claim." *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 542 (Ky. App. 2013).

Under Kentucky law, utility companies must maintain their assets "in a reasonably safe condition for the safety of pedestrians and the traveling public."

---

[5] *Albright, supra*, at *35.

*Lutz v. Louisville Water Co.*, 163 S.W.2d 29, 30 (Ky. 1942). Leaving a plate unsecured would be a violation of that duty. *Id.* But liability for that violation "depends on whether it had any actual notice of the condition or whether the condition had existed for a sufficient length of time to charge it with constructive notice." *Louisville Water Co. v. Cook*, 430 S.W.2d 322, 324 (Ky. 1968).

We appreciate the distinction insisted upon by Whitsett between water meter plates and sewer cover plates. A motivation exists for people to unsecure water meter plates to access water that does not exist for sewer or water drainage plates. But this misses the point. This difference may cause unsecured water-related plates more often, but the point is still the requirement of notice of an unsecured plate before MSD must act.

The duty to act to repair a loose plate arises only with notice of the condition. This same rationale applies to other governmentally maintained properties, not just water or sewer utilities. *See Commonwealth, Dep't of Highways v. Gen. & Excess Ins. Co.*, 355 S.W.2d 695 (Ky. 1962) (Department of Highways liable for a large fault in the highway that caused a motor vehicle accident because they had notice of the condition in time to avoid accident). *See also City of Paintsville v. Spears*, 47 S.W.2d 727 (Ky. 1932) (city held liable for a defect in a sidewalk of which it had notice and which led to a pedestrian falling and being injured).

Rather than offer any proof of notice, Whitsett insists that the plate must have been left unsecured when first installed, perhaps decades ago. Essentially, Whitsett asserts that the only reasonable inference is that the cover plate must not have been properly secured originally, thus rendering MSD liable for that negligence in the installation. We cannot agree. What Whitsett calls an inference is simply speculation.

Whitsett had lived at this address for approximately thirty-five years, and no evidence was put forth that there was any issue with the cover plate until her fall.

> Q: . . . And so my question to you is based on, I guess, your discovery responses. Was it covered in leaves and debris and dirt?
>
> A: Yes. . . . It's always covered in dirt and debris and leaves.
>
> Q: As we see surrounding it in these photos?
>
> A: Yes
>
> Q: . . . Okay. Did you know it was there?
>
> A: Yes, I know it's there. I didn't know of exactly where it was. Because I never paid attention to it.
>
> Q: To your knowledge, was it there when you all – when you moved in 35 years ago?
>
> A: That, I don't recall.
>
> Q: Do you have any recollection of it being installed?

A: I don't.

Q: You just don't know?

A: I don't know.

Q: . . . Okay.  Did you ever call MSD about it prior to December 9, 2021, for any reason?

A: No.[6]

We find the facts of this case similar to those in *Carucci v. Northern Kentucky Water District*, 657 S.W.3d 924 (Ky. App. 2022).  Like the plaintiff in *Carucci*, Whitsett was unable to provide any evidence of how long the plate was loose prior to her fall.  It is undisputed that no one from MSD had worked on or otherwise handled the plate at any recent point in time.  Whitsett makes essentially the same argument that the *Carucci* plaintiff made, which this Court rejected:

> Though Carucci speculated that an NKWD employee failed to secure the meter cover upon completing the May 2015 inspection, she offered no evidence to show that it was more likely that this occurred rather than a member of the public had accessed the meter and left the cover unsecured.  So, based on the mere possibility the employee could have left the meter cover unsecured, the trial court properly granted summary judgment.
>
> In sum, Carucci did not offer affirmative evidence that the employee who inspected the meter in May 2015 failed to secure the meter cover at the end of his inspection.  Nor did she offer evidence of actual or constructive notice of the unsecured cover to NKWD, so

---

[6] Pamela Whitsett Deposition, July 11, 2023, Page 74-75.

there is no basis for liability under controlling Kentucky precedent.

*Carucci*, *supra*, at 931.

Whitsett similarly argues that, while she has no idea of when the cover plate became loose, no one else could have unsecured it. Thus, MSD must have failed to secure it when it was installed. That is again just speculation.

An older case provides further guidance. *Res ipsa loquitur* may not be applied to establish liability for this loose plate. *Morrow v. City of Harlan*, 344 S.W.2d 401, 402 (Ky. 1961). In that case, workers had performed maintenance on a manhole cover. Less than two days later, a pedestrian fell when the cover came loose. Even that short of a period between work done on the cover and a fall did not give rise to a permissible inference that the installation was negligently performed. That case again emphasizes that negligence may not be based on speculation.

If we also were to engage in speculation, we note some possibilities. In 2014, a report had been made about water pooling in the area of the plate. As Whitsett pointed out, the plate was covered with mud and debris from drainage over perhaps years. Apparently, the property owner did not see any need to clean off this part of the driveway. We could speculate that the cover came loose due to

corrosive effects of standing water[7] and the mud and debris covering the plate. Also, in the decades since its installation, the plate was no doubt run over by the wheels of many motor vehicles on this driveway. The cumulative effect of these impacts could have caused a loosening of the lid. But neither we nor Whitsett are allowed to speculate in establishing a negligence case.

Summary judgment is appropriate when "the nonmoving party relies on little more than speculation and supposition to support his claims. The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 201 (Ky. 2010), *as modified on denial of reh'g* (Nov. 23, 2011) (internal quotation marks and citations omitted).

Whitsett argues that MSD could not prove it secured the lid when it was installed decades ago, but it is the plaintiff who bears the burden of proof in a negligence action. *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. App. 2009). It is not MSD that must prove it installed the plate properly; it was Whitsett's burden to prove that MSD did not. She cannot simply assume this. Whitsett did not present any evidence to create a *genuine* issue of material fact in this case.

---

[7] It is common knowledge that water is corrosive over time. *Corrosivity*, U.S. GEOLOGICAL SURVEY, https://www.usgs.gov/mission-areas/water-resources/science/corrosivity (last visited Apr. 23, 2005).

## CONCLUSION

Simply put, Whitsett speculates that the plate was loose for decades. Speculation will not defeat summary judgment. Whitsett also was unable to put forth affirmative evidence that MSD had any notice that the plate was loose. MSD was entitled to summary judgment. The Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Bradley D. Harville
Louisville, Kentucky

BRIEF FOR APPELLEE:

Justin M. Schaefer
Louisville, Kentucky