**LOUISVILLE WATER COMPANY, Appellant,**

v.

**Anna Catherine COOK, Appellee.**

Court of Appeals of Kentucky.

June 28, 1968.

Louis N. Garlove, Carl J. Bensinger, Louisville, for appellant.

Allen Schmitt, Louisville, for appellee.

MONTGOMERY, Judge.

Anna Catherine Cook recovered judgment against the Louisville Water Company for $8,540 for injuries suffered when she fell into a water meter hole owned by the water company. The company appeals and urges that there was a failure to show that it had actual or constructive notice of the condition; that the damages awarded are excessive; and that the court erred in allowing certain testimony concerning permanent injuries.

Appellee claimed that on March 18, 1963, at about 3 p.m., she stepped on a water meter cover in the sidewalk in front of 2235 Bank Street in Louisville. She urged that the appellant was negligent in its failure to have the meter cap securely fastened down and that it tilted when she stepped on it, causing her to fall into the meter hole and to sustain injuries. The water meter cover

is normally locked into place by the use of a key used by the meter reader.

On the issue of notice to appellant, the evidence is that the water meter had been turned off on January 4, 1963, and had been turned on again on January 29, 1963. The water company representative read the meter on February 8, 1963, and again on April 8, 1963. It was shown that the general and customary frequency for reading meters was every two months, although it had formerly been once each month.

Michael Duvall, fourteen years old, who moved to 2235 Bank Street on March 4, 1963, said that the meter cover was loose as early as March 9, 1963. His attention was attracted to it when he heard the noise as children rolled auto tires over the cover. The testimony of his twelve-year-old brother corroborated him.

Delores Cook, appellee's sixteen-year-old daughter, testified that she saw the meter cover half off around 7:45 a.m. on the day of the accident. She also testified that she saw the meter cap entirely off, lying to the side of the meter hole, about three days before the accident. Margaret Cook, another daughter, corroborated Delores in her statement. An employee of the water company tightened the meter cover in question, which was loose, the next day after appellee fell. It is admitted that no one from the water company had visited, examined, or inspected the meter between February 8 and March 18, 1963.

■ It was held in Lutz v. Louisville Water Company, 291 Ky. 31, 163 S.W.2d 29, approved in Louisville Water Company v. Lutz, 296 Ky. 432, 177 S.W.2d 570, that it is the duty of a water company to maintain in a reasonably safe condition its meters located in or near a street or sidewalk of a city, and that leaving a meter cap unlocked is violative of this duty. It was further held that the company's liability depends on whether it had any actual notice of the condition or whether the condition had existed for a sufficient length of time to charge it with constructive notice. City of Elizabethtown v. Baker, Ky., 373 S.W.2d 593. Cf., on constructive notice, Commonwealth, Department of Highways v. General & Excess Insurance Company, Ky., 355 S.W.2d 695; Freeport Transport, Inc. v. Commonwealth, Department of Highways, Ky., 408 S.W.2d 193; Commonwealth, Department of Highways v. Maiden, Ky., 411 S.W.2d 312. Under the authorities cited, the evidence was sufficient to make the question of constructive notice a jury matter.

Appellee recovered judgment for $540 for special damages and $8,000 for her personal injuries. Appellant insists that the damages are excessive. Appellee's injuries were diagnosed by Dr. Ben A. Reid, a specialist in industrial medicine and surgery, as sprains of the neck, right shoulder and lumbosacral region, and crushing injuries to the chest. There were multiple abrasions and some lacerations on her chest and on one ankle. Appellee suffered from vomiting which was attributed to stomach spasms. She was treated at the hospital for six days. Dr. Reid also saw her at her home.

Dr. Allan F. Zoeller, an orthopedic specialist, also examined appellee from time to time, the last examination being about the time of the trial in April 1965. He found that appellee had a 20–25 degree loss of motion in the lower back region and that the straight-leg-raising test was limited 30 degrees bilaterally. His diagnosis was that appellee had sustained a ligament injury to her neck and lower back and would have further pain and suffering because the ligaments in her neck and lower back had not properly healed. Appellee complained of pain and suffering and inability to perform her normal household duties.

■ Appellant offered no medical testimony in contradiction. In the light of Noel v. Creary, Ky., 385 S.W.2d 951, the award of damages does not seem excessive at first blush. See Hedges v. Neace, Ky., 307 S.W.2d 564.

No merit is found in appellant's contention that the court erred in permitting Dr. Zoeller to testify that appellee's injuries were permanent and to the extent thereof. Appellant contends that the complaint did not contain an allegation of permanent injury or prayer for damages therefor.

Appellant relies on Lee v. Stamper, Ky., 300 S.W.2d 251. However, this authority affords small comfort. There, it was held permissible to allege special damages in the aggregate rather than in a specific amount and that the "principal objective of a pleading is to give the opposing party fair notice of the essential nature of the claim presented and the type of relief to which the claimant deems himself entitled."

Appellant's complaint contained the following allegation:

"Plaintiff states that she has suffered great physical pain and mental anguish as a result of the injuries which she received as above set out, and that as a result of same she has been forced to have medical care and attention, which will continue for some time to come, all to her damage in the amount of $25,000."

The fair import of the above allegation is that the injury is more than temporary, especially when considered with the claim for $25,000 in damages. There is a further reason why there was no error in this respect. The trial was had more than two years after appellee fell and nineteen months after the complaint was filed. Appellant had available a remedy by way of discovery under CR 26 to secure information concerning appellee's claim and to reduce any element of surprise concerning a claim of permanent injury. Odum v. Willard Stores, Inc., D.C., 1 F.R.D. 680; O'Donnell v. Breuninger, D.C., 9 F.R.D. 245; Broadway & Ninety-Sixth Street Realty Company v. Loew's, Inc., D.C., 21 F.R.D. 347. Under the circumstances, appellant had fair notice that appellee would seek to prove permanent injuries and had available at its command the means with which to learn about such claim. The objection made to the admission of Dr. Zoeller's statement concerning permanent injuries is not proper.

Judgment affirmed.

All concur.