RENDERED: DECEMBER 16, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0524-MR

KATE CARUCCI                                                                 APPELLANT

v.
APPEAL FROM CAMPBELL CIRCUIT COURT
HONORABLE DANIEL J. ZALLA, JUDGE
ACTION NO. 16-CI-00476

NORTHERN KENTUCKY WATER
DISTRICT                                                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CALDWELL AND K. THOMPSON, JUDGES.

CALDWELL, JUDGE: Kate Carucci ("Carucci") appeals from the trial court's

granting summary judgment in favor of Northern Kentucky Water District

("NKWD") on her negligence claim. Based on the evidence in the record, we

conclude that NKWD could not be held liable for Carucci's injuries from stepping

on an unsecured water meter cover under controlling Kentucky precedent.[1]  So, we affirm.

## FACTS

Carucci was walking on a public sidewalk when she stepped on an unsecured water meter cover and fell on June 15, 2015.  She suffered physical injuries.  NKWD does not dispute that its water meter cover was not properly secured at the time.

Carucci reported her fall on the unsecured meter cover to NKWD on June 22, 2015.  NKWD sent an employee to secure the cover on June 24, 2015.  NKWD asserts it had not received any reports of dangerous conditions at the meter before Carucci reported her accident.  But NKWD employees had been out to this meter a couple of times earlier that year.

NKWD had shut off the water at this meter in January 2015 when a customer moved out.  In May 2015, it sent an employee to the meter for a billing inspection.  The billing inspection occurred a couple of days after NKWD became aware of unauthorized water use at that location.

---

[1] Our reasoning may not be entirely identical to the trial court's reasoning.  But it is still proper to affirm based on the record before us.  "If the summary judgment is sustainable on any basis, it must be affirmed."  *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006).  *See also Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

In May 2016, Carucci filed her lawsuit against NKWD. NKWD filed a motion for summary judgment on various grounds. The trial court granted its first summary judgment motion on the basis of governmental immunity. The decision was reversed on appeal and the case was remanded to the trial court.[2] *Northern Kentucky Water District v. Carucci*, 600 S.W.3d 240 (Ky. 2019), *as modified* (Feb. 20, 2020).

Following remand, the parties engaged in additional discovery and the case was set for a bench trial. NKWD again filed a motion for summary judgment. The parties submitted briefs and supporting evidence including deposition and affidavit testimony, business records, and NKWD's employee safety manual.

NKWD submitted the affidavit of Lindsey Rechtin, who served as NKWD's vice president of finance and support services.[3] Rechtin explained that NKWD meters were read remotely by instruments from up to a block away, so meter readers did not actually see the meters when gathering billing data. She testified that NKWD did not routinely inspect meters and stated that no legal or industry standard required routine inspections for the purpose of preventing people passing by from falling. She asserted frequent inspections would be cost-

---

[2] This Court reversed the initial grant of summary judgment based on governmental immunity. On discretionary review, our Supreme Court affirmed our reversal of the summary judgment and remanded to the trial court for further proceedings.

[3] Rechtin testified by affidavit in March 2017 prior to the entry of the first summary judgment. At the time of her testimony, she was the vice president of finance and support services.

prohibitive since there were several thousand meters in its service areas. She testified that water meter covers were secured by special bolts, but that the tools used to loosen such bolts were readily available to the public. She averred plumbers and homeowners frequently opened the covers. She also testified that if someone reported seeing a loose meter cover, NKWD would promptly send a worker to secure the cover but that it otherwise lacked the means to discover this hazard. And she averred that, other than Carucci's report, NKWD had no records of any citizens' complaints about the water meter.

NKWD also offered the affidavit testimony of Jeff Vories, who had served as a field services supervisor.[4] Business records related to the water meter at issue were attached to his affidavit. Vories vouched these were true and correct copies of routine business records of NKWD's activities at the water meter. He explained that NKWD billed customers quarterly and received data about water consumption at the end of each quarterly billing cycle.

According to Vories' affidavit, the May 2015 billing inspection entailed removing the water meter cover, turning off the valve in the crock housing the meter, and then putting a lock on the valve so it could not be reopened. The

---

[4] Vories testified by affidavit in March 2017 prior to the trial court's entry of the first summary judgment. Vories was NKWD's field services supervisor at the time of his affidavit. After the first summary judgment was reversed and the case remanded to the trial court, Vories testified by deposition in August 2020. Vories was no longer employed by NKWD at the time of his deposition.

attached May 2015 inspection record (a computer screenshot) notes "t/o" and "lock" – meaning the valve was turned off and a lock was placed on the valve.

The attached May 2015 inspection record did not contain specific notations about securing the water meter cover, however. Vories averred the employee would have presumably replaced and secured the meter cover. And NKWD's employee safety manual, included in the record, instructs employees to properly secure meter covers after working on meters to avoid accidents. But the inspecting employee never testified in this case. And Vories was not present at the May 2015 inspection as he admitted in his deposition.

According to Vories' affidavit, the employee sent out to the meter a couple of days after Carucci's report did not make any notes about finding the valve turned back on or the lock missing.[5] Several weeks later, NKWD became aware of unauthorized water use at the same location and sent an employee there a couple of days later. According to Vories' affidavit, the employee discovered the lock on the valve was cut off so the meter was removed completely before being replaced when a new customer established an account on August 10, 2015.

Vories surmised, in his affidavit, that someone not connected to NKWD must have opened the water meter to cut off the lock and to turn on water

---

[5] No written records about Carucci's June 22, 2015 report to NKWD or about an NKWD employee's June 24, 2015 inspection were attached to Vories' affidavit.

prior to Carucci's accident. He asserted this person would have been the only person to have accessed the water meter cover after NKWD locked the valve in May 2015 but before Carucci's accident. Like Rechtin, he averred it was cost-prohibitive and practically impossible to visually inspect water meters on a regular basis. And he also averred NKWD had no reason or means to discover that anyone had tampered with the meter until Carucci reported her accident.

The trial court determined that Carucci failed to offer affirmative evidence that NKWD had actual or constructive notice of the unsecured water meter cover before her accident. Without affirmative evidence of actual or constructive notice of the unsecured water meter cover, the trial court opined NKWD could not be held liable for negligence under controlling Kentucky precedent. Therefore, the trial court granted NKWD's motion for summary judgment in an opinion and judgment ("trial court opinion").

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment under the non-deferential *de novo* standard. *See Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013).

-6-

## ANALYSIS

To prevail on her negligence claim, Carucci would have to prove all required elements of a negligence claim including duty. *See, e.g.*, *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016), *as modified on denial of reh'g* (Aug. 24, 2017).

Carucci argues the trial court misstated the law in its order, stating: "A relationship giving rise to a duty between the parties in this case does not develop until Carucci presents at least some affirmative evidence that NKWD had actual or constructive notice of the unsecured water meter cover prior to her accident." To the extent that the trial court's statement might suggest that NKWD owed no duties at all to Carucci, we agree that this misstates the law.

Instead, Kentucky precedent clearly holds that a water company has a duty to maintain water meters on public sidewalks "in a reasonably safe condition for the safety of pedestrians and the traveling public." *Lutz v. Louisville Water Co.*, 291 Ky. 31, 163 S.W.2d 29, 30 (1942). *See also Louisville Water Co. v. Cook*, 430 S.W.2d 322, 324 (Ky. 1968). And precedent states that leaving a water meter cover unsecured violates that duty. *Id.*; *Lutz*, 163 S.W.2d at 30. Even so, a water company is not liable for injuries stemming from an unsecured water meter cover in the absence of evidence of actual or constructive notice of the dangerous condition. *Id.*; *Cook*, 430 S.W.2d at 324.

## I. No Proof of Actual Notice of Unsecured Meter Cover in Record

Carucci contends there was evidence of actual notice to NKWD. She points out that there is no dispute that NKWD was generally aware of the dangers posed by unsecured water meter covers and of unauthorized tampering with water meter covers. She also points out that NKWD indisputably knew there were issues about the specific water meter in May 2015. So, she argues NKWD had actual notice.

But Carucci does not point to any evidence of actual notice that the water meter cover was not properly secured. For example, she does not point to any evidence that anyone had reported to NKWD that the specific water meter cover was loose prior to her accident. *Cf. Lutz*, 163 S.W.2d at 30.

## II. No Proof of How Long Meter Cover was Unsecured for Constructive Notice

Even without actual notice of an unsecured water meter cover, a water company could be liable for resulting injuries where there is evidence that a meter cover was unsecured long enough that the water company should be charged with constructive notice. *See Cook*, 430 S.W.2d at 324 (jury question on whether water company had constructive notice of unreported loose water meter cover since witnesses testified about directly observing the water meter cover loose or off three to nine days before the accident). But Carucci did not offer any witness testimony

or any other evidence of anyone having observed that the meter cover was loose for any length of time prior to her accident.

## III. Evidence NKWD Detected Unauthorized Water Use Was Not Evidence of Actual or Constructive Notice of Dangerous Condition Here

Despite the lack of evidence of direct reports to NKWD about the loose water meter cover or anyone observing that the meter cover was loose before the accident, Carucci argues there is evidence of actual or constructive notice based on NKWD's becoming aware of unauthorized water use in May 2015. But unauthorized water use, by itself, does not represent a dangerous condition to passersby. And NKWD promptly sent out an employee to the meter after detecting unauthorized water use. So NKWD argues it had no reason to suspect that the cover was loose after May 12, 2015, since its employee had a duty to secure the cover after working on the meter. This employee was the last water company representative to access the meter before Carucci's accident a few weeks later.

Carucci points out that the last water company employee sent to the meter before her accident did not testify to having secured the meter before he left – unlike some precedent cited by NKWD and the trial court. *See City of Elizabethtown v. Baker*, 373 S.W.2d 593, 595 (Ky. 1963) ("The meter readers testified the meter cover was in good condition at the last reading and that they

-9-

replaced the cover and locked it at that time.").[6]  But the key reason for not holding

the water provider liable in *Baker* was not the employee's testimony about

securing the cover several weeks beforehand.  Instead, it was the lack of actual

notice from reports and the lack of evidence of how long the cover was unsecured

to support a finding of constructive notice.  *See id.*  Similarly, there was no

evidence of prior reports of the unsecured meter cover here and no evidence about

how long the cover was unsecured before the accident.

### IV. Lack of Affirmative Evidence that NKWD Employee Failed to Secure Meter Cover after May 2015 Inspection

Carucci suggests that the employee who inspected the meter in May

2015 may have failed to properly secure the meter cover.  NKWD argues this is

pure speculation.  Both parties agree the employee had a duty to secure the meter

after the inspection and this is consistent with instructions in the NKWD employee

safety manual.  But neither party offered direct evidence that the employee did or

did not secure the cover at the end of this inspection.[7]

---

[6] *See also Penix v. Mt. Sterling Water & Sewer*, No. 2017-CA-001661-MR, 2020 WL 3605843, at *3 (Ky. App. Jun. 26, 2020).  Though this unpublished case is not binding authority and we do not rely on it, the parties have referred to it in their briefs.  There appears to be no recent published Kentucky appellate opinion concerning a water company's liability for injuries stemming from an unsecured water meter.

[7] NKWD offered Vories' testimony that he presumed the employee would have secured the meter, but Vories admitted not being present at the May 2015 inspection.  Carucci offered no evidence that the employee failed to secure the meter after this inspection other than testifying by deposition that the meter cover was not secure when her accident occurred a month afterward.

-10-

Carucci argues this presents a question of fact whether the employee secured the meter cover. She contends the employee who inspected the meter in May 2015 may have been negligent in failing to comply with a duty to secure the meter. She asserts NKWD could be held vicariously liable for the employee's negligence under the principle of *respondeat superior*. Of course, such vicarious liability would depend on showing negligence on the employee's part. *Brooks v. Grams, Inc.*, 289 S.W.3d 208, 211 (Ky. App. 2008).

To possibly show any negligence on the employee's part, Carucci would have to come forward with proof that the employee breached a duty – *i.e.*, failed to secure the cover. *See Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 542 (Ky. App. 2013) (breach of duty is one required element of negligence and one cannot prevail on a negligence claim without proof of each required element).

Carucci argues an inference could be made that the employee did not secure the meter cover based on it not being secured when she was injured a month later. But the meter cover was located on a public sidewalk and NKWD offered proof it could have been accessed by others. As the meter cover was accessible to others and there was no direct evidence the employee failed to secure the cover in May 2015, NKWD argues Carucci cannot show the employee acted negligently and it is entitled to judgment in its favor.

-11-

In support, NKWD cites to *Hansen v. City of Pocatello*, 145 Idaho 700, 184 P.3d 206 (2008), in which the Idaho Supreme Court affirmed summary judgment in favor of the city. The city operated a water utility and had a duty to keep its water meters in reasonably safe condition under Idaho law. *Id.* at 209. The plaintiff in *Hansen* suffered injuries after stepping on an unsecured water meter cover – like Carucci. Nine days before Hansen's fall, a city employee had opened the meter cover to read the meter. The city employee did not note any problems with the meter in his work log. *Id.* at 207. He later testified it was standard practice to secure the meter covers after meter readings, but he did not testify to remembering that meter reading. A supervisor testified no one had reported seeing the unsecured meter cover before the accident and it was possible for members of the public to access the meter by removing the cover. *Id.* at 209.

The Idaho court granted the city's motion for summary judgment on the plaintiff's claim of negligence. The court rejected the plaintiff's *res ipsa loquitor* argument since the meter cover was not under the exclusive control of the city and there was proof the cover could be removed by members of the public. *Id.* at 208. The court also rejected Hansen's argument that the accident itself could support an inference the city employee left the meter cover unsecured. The court found it appropriate to grant summary judgment since Hansen offered no evidence

-12-

to show it was more likely that the city employee – rather than a member of the public – had left the cover unsecured:

> Hansen had the obligation of showing that her injuries were caused by the negligence of the City. Under the facts of this case, she would be required to prove that the city employee negligently left the lid of the water meter askew when he read the water meter nine days before her accident. Although there was no direct evidence that he did so, Hansen argues that the happening of the accident itself gives rise to an inference that he left it askew. Another explanation is that someone else left the lid askew, since the water meter was located on a public sidewalk and its lid was not difficult to remove. Hansen cannot point to any evidence indicating that one explanation is more plausible than the other. Because Hansen presented no evidence that would remove this issue from the realm of speculation, we conclude that the district court properly granted summary judgment.

*Id.* at 209-10.

*Hansen* is not controlling authority in Kentucky. And there are factual distinctions as Carucci points out. For example, the last access to the meter in *Hansen* just nine days before the accident[8] was for a routine meter reading – rather than an inspection prompted by detected unauthorized water use a month prior. And unlike the present case, the water provider employee who last accessed

---

[8] The fact that there was a significantly longer time between the recorded water company access to the meter and the accident here – over a month rather than just nine days – suggests there is an even stronger case for granting summary judgment for NKWD. This is especially true given the evidence of public access and the lack of any report of an unsecured meter for the time period between the May 2015 inspection and the June 2015 accident.

the meter before the accident testified in *Hansen* – although he did not specifically remember that meter reading and could only testify to the standard practice of securing the meter. *Id*. at 209. Nonetheless, we find this authority persuasive and consistent with Kentucky precedent on summary judgment.

Under Kentucky's summary judgment standard, the record is to be construed in the light most favorable to the party opposing summary judgment. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). And summary judgment cannot be properly granted unless it is impossible for the non-moving party to produce evidence warranting judgment in his/her favor at trial. *Id*. at 483. But the non-moving party must still present affirmative evidence showing there are genuine issues of material fact for trial to defeat a properly supported summary judgment motion. *Id*. at 482. Despite Kentucky's strict summary judgment standard, summary judgment may be properly granted when the opposing party offers only speculation and arguments to support his/her claims. *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 201 (Ky. 2010), *as modified on denial of reh'g* (Nov. 23, 2011).

Though Carucci speculated that an NKWD employee failed to secure the meter cover upon completing the May 2015 inspection, she offered no evidence to show that it was more likely that this occurred rather than a member of the public had accessed the meter and left the cover unsecured. So, based on the mere

-14-

possibility the employee could have left the meter cover unsecured, the trial court properly granted summary judgment.

In sum, Carucci did not offer affirmative evidence that the employee who inspected the meter in May 2015 failed to secure the meter cover at the end of his inspection. Nor did she offer evidence of actual or constructive notice of the unsecured cover to NKWD, so there is no basis for liability under controlling Kentucky precedent. The trial court properly determined that it was impossible for Carucci to prevail on her negligence claims and that NKWD was entitled to judgment as a matter of law. We must affirm its grant of summary judgment.

Further arguments in the briefs which we have not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we AFFIRM the trial court's judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Haley S. Stamm
Fort Mitchell, Kentucky

BRIEF FOR APPELLEE:

Timothy J. Walker
Lexington, Kentucky