RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0305-MR

BARRY HICKMAN                                                    APPELLANT

APPEAL FROM SCOTT CIRCUIT COURT
v.         HONORABLE KATHRYN H. GABHART, JUDGE
ACTION NO. 20-CI-00622

LOVE'S TRAVEL STOPS &
COUNTRY STORES, INC.                                             APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

LAMBERT, JUDGE: Barry Hickman has appealed from the summary judgment

of the Scott Circuit Court dismissing his premises liability complaint against

Love's Travel Stops & Stores, Inc. (hereinafter "Love's"). Because we agree with

Hickman that summary judgment was improper, we reverse the summary judgment

entered January 25, 2023.

Hickman and his family, residents of Michigan, were traveling through Kentucky on May 11, 2020, when they stopped at a Love's location in Sadieville for gas and to walk their two dogs. While walking the dogs, Hickman stepped on an unsecured, upside down water meter lid in a grassy area, causing the lid to flip. He fell into the water meter box (or vault), thereby injuring his left leg. Hickman filed a complaint in Scott Circuit Court in October of that year seeking damages against defendants Love's and Georgetown Municipal Water and Sewer Service (the water company). He alleged that he had fallen while exercising care for his own safety and that Love's and the water company had a duty to maintain, and keep safe, the water meter vaults on the premises. Both defendants answered the complaint, and the parties engaged in discovery.

The water company filed a motion for summary judgment, arguing that it did not have a duty to maintain the grassy area of Love's where the water meter box was located because it did not own that property. Rather, the non-delegable duty to maintain that area belonged to the property owner. The water company only had a duty to maintain water meters located in or near a city street or sidewalk. In addition, there was no evidence that it had notice that the lid was unsecured. In support of the motion, the water company included the affidavit of its distribution operator, Andrew Tackett. Mr. Tackett stated that on May 8, 2020, he responded to Love's for a call that there was no water. He checked the water

meter to ensure that the water supply had not been turned off. Everything was in order, and he replaced the lid and secured it by inserting the tree tabs on the bottom of the lid into their respective sockets. This prevents the lid from sliding. Mr. Tackett went into Love's, where an attendant told him there was no hot water, a problem that did not have anything to do with the water company. The water company did not receive any complaints or notice prior to May 11 that the lid was broken, defective, or missing. It therefore argued that there were no genuine issues of material fact with regard to its liability and that it was entitled to a judgment as a matter of law. Hickman objected to the motion, arguing that the water company had installed and maintained the water meter vault since 2015 and owed a duty to maintain its meters in a reasonably safe condition.

The court heard arguments from the parties at an April 7, 2022, hearing. Hickman opposed the motion, arguing that facts existed for a jury to decide as to whether the water company's employee had improperly placed the lid on the vault during his call three days before the incident. Love's indicated it was planning to file its own motion for summary judgment on the basis that there was no evidence it had done anything with respect to the water meter vault or lid. At the conclusion of the arguments, the court stated that it was granting the water company's motion. "There was plenty of time for something to happen after [the water company employee] would have placed [the lid] back." The court

specifically stated that this ruling did not apply to Love's, because its employees were there every day and had a chance to look at the premises. "If something was out of whack, it'd be up to them to notice it." On May 12, 2022, the circuit court entered a written order memorializing its oral ruling and dismissed the water company from Hickman's case.[1]

Love's subsequently filed its own motion for summary judgment, relying upon the analysis of the former Court of Appeals as to the appropriate duty in *Louisville Water Company v. Cook*, 430 S.W.2d 322, 324 (Ky. 1968) ("[I]t is the duty of a water company to maintain in a reasonably safe condition its meters located in or near a street or sidewalk of a city[.]"). Love's argued that only the water company maintained the water meter vault that caused Hickman's fall and that the water company did not inspect it regularly. Love's, on the other hand, did not have any obligation to inspect or maintain the water company's water meter vaults or lids. Therefore, Love's did not owe any duty to Hickman with respect to the water meter vault lid. And even were a duty to be assumed, Hickman failed to produce any evidence of a breach. As to the summary judgment dismissing the water company, Love's stated that the circuit court granted the motion because there was no evidence that the water company was aware of an unsafe condition in

---

[1] Special Judge Robert W. McGinnis heard the parties' arguments at the April 2022 hearing and entered the summary judgment the following month. The current judge was appointed shortly thereafter on May 18, 2022, and presided over the remainder of the case.

enough time to remedy it. Accordingly, Love's argued that there were no genuine issues of material fact and that it was entitled to a judgment as a matter of law.

In response, Hickman cited to the Supreme Court of Kentucky's opinions of *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901, 909 (Ky. 2013), and *Grubb v. Smith*, 523 S.W.3d 409, 426 (Ky. 2017), to argue that as a business invitee, Love's owed him an affirmative and non-delegable duty to maintain the premises in a reasonably safe manner and protect him from unreasonably dangerous conditions on its premises. He also argued that the facts in *Cook*, *supra*, were distinguishable from his case because the meter in question was not located in or near a street or sidewalk of a city. Rather, the water meter vault he fell into was located on the premises of Love's. Hickman went on to argue that Love's had breached this affirmative duty in failing to discover that the water meter vault lid was unsecured, which caused the vault to be in an unreasonably dangerous condition. He concluded that summary judgment was not warranted due to the existence of genuine issues of material fact that needed to be resolved by a jury.

In reply, Love's argued that the only areas it had a duty to maintain included the store, the gas pumps, the sidewalks, and the parking lot. The water meter lid was not within its duty because the water company had that duty. And

-5-

there was no evidence that Love's had actual or constructive notice that the lid may have been improperly secured for enough time to have reported the situation.

The circuit court held a hearing in June 2022, where the parties presented their respective positions and discussed the prior ruling, and it granted summary judgment to Love's in an order entered January 25, 2023. The court, citing various Kentucky caselaw and regulations, held that, although Hickman was injured on its premises, Love's could not be held liable for his injury because it resulted from a defective water meter vault lid. The water company, it held, had the duty to maintain its water meter vaults in a reasonably safe condition, not Love's. Because the circuit court held that Love's did not owe any duty to Hickman, it did not reach the question of whether a breach occurred. This appeal now follows.

Before we reach the merits of Hickman's arguments, we shall address two procedural issues Love's has raised related, first, to Hickman's brief and, second, to what is properly included in the appellate record. First, Love's asserts that Hickman failed to include statements of preservation at the beginning of each argument in contravention of Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4). Hickman corrected this in his reply brief, as he is permitted to do. *See Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 147 (Ky. App. 1990) ("a reply brief may be used to both supplement an appellant's original brief and to correct a

procedural defect related to [the failure to include statements of issue preservation].").  Therefore, we find no merit in this argument.

Second, Love's contends that Hickman improperly referenced materials in his appellate brief that should not have been included in the record; namely, the complete transcripts of depositions, portions of which had been cited to and attached to the parties' summary judgment filings.  Following the entry of the summary judgment that is the subject of this appeal, but prior to filing of the notice of appeal, Hickman filed the complete transcripts of six depositions, although we note that one of the depositions – of Hickman himself – appears to have been filed in the court record in June 2021.  After the notice of appeal was filed, Love's moved the circuit court pursuant to Kentucky Rules of Civil Procedure ("CR") 75.08 to strike the newly-filed deposition transcripts from the appellate record because they had not been before the court when it made its decision.[2]  Hickman objected to the motion, citing the court's local rule that all

_____

[2] CR 75.08 provided that "[i]t is not necessary for the record on appeal to be approved by the trial court or judge thereof except as provided in Rule 75.12, Rule 75.13, and Rule 76, but if any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth.  If anything material to either party is omitted from the record on appeal by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, or the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected, and if necessary that a supplemental record shall be certified and transmitted by the clerk of the trial court.  All other questions as to the content and form of the record shall be presented to the appellate court."  This Rule was deleted as of January 1, 2023, and is now found in RAP 25(D).  Because Love's filed its motion after the effective date of Kentucky's Rules of Appellate Procedure, it should have cited this new Rule to the circuit court.

-7-

depositions shall be filed in the circuit clerk's office.  Hickman also stated that he had withdrawn one of the depositions in his designation of record as that deposition was not cited in any of the parties' briefs filed in the circuit court.  He concluded by arguing that the inclusion of the complete depositions would serve as a courtesy for the Court of Appeals in reviewing the witness testimony.

The court heard arguments from the parties and denied the motion, agreeing with Hickman that his filing of the complete transcripts was in line with the local rules but noting that Love's could make the argument on appeal that the full transcripts were not before the court when the ruling was entered.

Love's raises the same argument in his appellate brief, properly citing RAP 25(D).  But based upon Hickman's reply brief, we find no merit in this argument as the references at issue were before the circuit court prior to its ruling. And pursuant to the applicable local rule, deposition transcripts are required to be filed with the clerk's office.  *See* Local Rules of the Fourteenth Judicial Circuit (LR14JC) XII ("All depositions shall be filed with the Circuit Clerk of the county in which the action is pending or sent in by registered mail to the Clerk for filing.").  We shall now address the merits of Hickman's appeal.

On appeal, Hickman argues that the circuit court too narrowly evaluated the duty owned to him and that Love's breached its duty of care,

entitling him to a reversal of the summary judgment. Love's disputes these arguments.

This Court's standard of review in an appeal from a summary judgment is well-settled in the Commonwealth:

> The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR 56.03). Upon a motion for summary judgment, all facts and inferences in the record are viewed in a light most favorable to the non-moving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Thus, a summary judgment looks only to questions of law, and we review a trial court's decision to grant summary judgment *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016); *see also Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010), *as modified on denial of reh'g* (Nov. 23, 2011). However, "[a] party opposing a summary judgment motion cannot rely on the hope that the trier of fact" would simply "disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Ryan v. Fast Lane, Inc.*, 360 S.W.3d 787, 790 (Ky. App. 2012) (citing *Steelvest*, 807 S.W.2d at 481).

*Lawson v. Smith*, 652 S.W.3d 643, 645 (Ky. App. 2022) (footnote omitted). We shall keep this standard in mind as we consider Hickman's arguments.

Initially, we recognize that "[t]he basic elements of a negligence claim are: 'duty, breach, causation, damages.'" *Phelps v. Bluegrass Hospitality Mgmt.,*

-9-

*LLC*, 630 S.W.3d 623, 628 (Ky. 2021) (citing *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015)). "The determination of whether a duty exists is a legal question for the court." *Shelton*, 413 S.W.3d at 908.

For his first argument, Hickman argues that the circuit court too narrowly evaluated the duty Love's owed to him in holding that this duty belonged to the water company. The circuit court's holding relied upon two decisions of the former Court of Appeals; namely, *Lutz v. Louisville Water Co.*, 291 Ky. 31, 163 S.W.2d 29, 30 (1942) ("The Water Company has the right to place its meters in or near the streets and sidewalks of the City, but it must maintain them in a reasonably safe condition for the safety of pedestrians and the traveling public."); and *Cook*, 430 S.W.2d at 324 ("[I]t is the duty of a water company to maintain in a reasonably safe condition its meters located in or near a street or sidewalk of a city, and that leaving a meter cap unlocked is violative of this duty. . . . [T]he company's liability depends on whether it had any actual notice of the condition or whether the condition had existed for a sufficient length of time to charge it with constructive notice.").[3]

---

[3] The circuit court also cited to two sections of the administrative regulation setting forth the water company's and the customer's respective responsibilities related to service connections (807 Kentucky Administrative Regulations ("KAR") 5:066 § 12(1)(a) and (2)), which have no relevance to this case.

Hickman does not contest that the water company has traditional duties regarding a water meter lid. However, he argues that, when the water meter vault is on private property, the water company's duties must coexist with the private property owner's duty to "exercise anticipation and attentiveness" about the conditions on its property. As he did below, Hickman cites to *Shelton*, *supra*, to argue that Love's owed him, as a business invitee, a general, universal duty of reasonable care. He also cites to *Grubb*, 523 S.W.3d at 426, for the following statement of law:

> The possessors of business premises, of course, are among the exceptions to the general rule of no affirmative duty. *Restatement* (*Third*) *of Torts: Phys. & Emot. Harm* § 40(b)(3) (2012). Such persons or entities generally do have a non-delegable, affirmative duty to protect their invitees from unreasonably dangerous conditions on the premises however those dangerous conditions came to be.

In addition to *Shelton* and *Grubb*, Hickman further relies upon the unpublished opinion in *Stewart v. Tafel*, No. 2009-CA-000225-MR, 2010 WL 1924986, at *3 (Ky. App. May 14, 2010),[4] in which this Court reversed the lower court's conclusion that the property owner did not owe the injured person a duty with respect to the uncovered water meter hole located in a public right-of-way

---

[4] This unpublished case is cited as persuasive authority pursuant to RAP 41.

-11-

abutting the property. After acknowledging the holdings in *Cook* and *Lutz*, the

Court stated:

> With this said, our courts have long held that "[t]he owner of property abutting upon a public sidewalk is liable to persons injured in consequence of a dangerous condition of the sidewalk created by some affirmative act of the owner or by some act of negligence on his part constituting a nuisance." *Equitable Life Assur. Soc. of U.S. v. McClellan*, 286 Ky. 17, 149 S.W.2d 730, 732 (1941); *see also Rollins v. Satterfield*, 254 S.W.2d 925, 927 (Ky. 1953); *Reibel v. Woolworth*, 301 Ky. 76, 190 S.W.2d 866, 867 (1945); *Hippodrome Amusement Co. v. Carius*, 175 Ky. 783, 195 S.W. 113, 115-16 (1917); *Stephens' Adm'r v. Deickman*, 158 Ky. 337, 164 S.W. 931, 933 (1914); *Covington Saw Mill & Mfg. Co. v. Drexilius*, 120 Ky. 493, 87 S.W. 266, 267, 27 Ky. L. Rptr. 903 (1905). Accordingly, there are occasions in which a property owner may be held liable for injuries occurring on an adjoining public pathway.
>
> In this instance, the "dangerous condition" at issue was not on a sidewalk but, rather, a water meter hole located on a public right-of-way that was allegedly left uncovered by [the property owner] or an agent acting on his behalf. We believe, however, that the aforementioned rule of law is equally applicable under the circumstances presented here given that each situation involves injuries occurring on a public passageway as the result of allegedly affirmative, negligent action on the part of an abutting landowner. Thus, if Tafel or an agent acting on his behalf removed the water meter cover and left it uncovered, this action created a "dangerous condition" that rendered Tafel liable for any injuries that resulted as a consequence of that action.

*Stewart v. Tafel*, 2010 WL 1924986, at *3 (footnote omitted). Hickman also cites

to *Brown Hotel Company v. Sizemore*, 303 Ky. 431, 436, 197 S.W.2d 911, 914

(1946) ("[T]here is an affirmative duty of seeing that a coal hole or similar servitude is properly guarded or protected when being used, and, as well, that the covering has been safely replaced; that the owner or possessor cannot absolve himself from liability or avoid performance of the duty by leaving it to another, such as the deliveryman of coal."). We find these citations to be persuasive.

We agree with Hickman that Love's owed a general duty of care to him with respect to the area of its property where he was injured. The water meter vault lid was on its property, not near or in a city street or sidewalk or some other public way. Love's has the duty to maintain its premises in a reasonably safe manner, and its premises include the area where the water meter vault lid was located. We do not agree with the assertion of Love's that Hickman conceded that the appropriate duty in this case was set forth in *Cook*, *supra*, based upon his argument in his response to the water company's motion for summary judgment. Rather, we agree with Hickman that the location of the water meter lid, on private property rather than on or near a city street or sidewalk, distinguishes the present case from both *Cook* and *Lutz*. Therefore, we must hold that the circuit court erred as a matter of law in holding that Love's did not owe a duty to Hickman with respect to the condition of the water meter vault lid.

For his second argument, Hickman contends that he can establish Love's breached its duty to him when it failed to notice, or report to the water

company, the hazardous condition created by the loose lid on the water meter vault. "Breach and injury, are questions of fact for the jury to decide." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003).

> [O]n a motion for summary judgment, a court must still examine each element of negligence in order to determine the legitimacy of the claim. But the question of foreseeability and its relation to the unreasonableness of the risk of harm is properly categorized as a factual one, rather than a legal one. This correctly "examines the defendant's conduct, not in terms of whether it had a 'duty' to take particular actions, but instead in terms of whether its conduct *breached* its duty to exercise the care" required as a possessor of land. If reasonable minds cannot differ or it would be unreasonable for a jury to find breach or causation, summary judgment is still available to a landowner. And when no questions of material fact exist or when only one reasonable conclusion can be reached, the litigation may still be terminated.

*Shelton*, 413 S.W.3d at 916 (footnotes omitted). Hickman argues that disputed issues of material fact remain to be decided by a jury as to the creation of the hazardous condition or the failure to report it.

Love's argues that, assuming it owes a duty to him, Hickman failed to present any proof of a breach of this duty. It states that there was no evidence that Love's had interacted with the lid between the date the water company's employee inspected it in relation to the service call and Hickman's injury three days later. However, we recognize that there was evidence in the record that employees of Love's would routinely inspect the premises, and Hickman contends that the

-14-

upside down lid would have been noticeable in these inspections. We agree with Hickman that he has presented sufficient evidence to overcome the motion for summary judgment. This is not to say that Hickman has established a breach occurred; rather, he has simply presented enough proof to establish that a disputed issue of material fact remains to be decided.

For the foregoing reasons, the summary judgment of the Scott Circuit Court is reversed, and this matter is remanded for further proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Preston P. Cahill
Lexington, Kentucky

BRIEF FOR APPELLEE:

Robert C. Rives IV
David N. Giesel
Suzanne M. Marino
Louisville, Kentucky