RENDERED:  JULY 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0773-MR

ROBIN QUALLS RAMSEY,
AS ADMINISTRATRIX OF THE
ESTATE OF KEISHA LANIER                                    APPELLANT


|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE PATRICIA MORRIS, JUDGE |
|  | ACTION NO. 18-CI-003933 |


LOUISVILLE WATER COMPANY                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, ECKERLE, AND KAREM, JUDGES.

KAREM, JUDGE:  Robin Qualls Ramsey, as administratrix of the estate of Keisha

Lanier, appeals from the Jefferson Circuit Court's grant of summary judgment to

the Louisville Water Company ("LWC").  The lawsuit alleged that Lanier[1] suffered injuries as a result of LWC's negligence in failing to ensure that the lid of the water meter vault was secured.  Because Ramsey failed to present any evidence that LWC had actual or constructive notice that the vault lid was unsecured, we affirm.

## BACKGROUND

On July 9, 2017, Keisha Lanier injured her leg when she stepped on a loose LWC water meter vault cover at 353 N. 26th Street in Louisville.  The cover or lid sits flush with the sidewalk over a cylindrical underground container, or vault, that contains the water meter and the valves used for turning the water on and off.  Although a special pentagonal wrench is required to open the vault lid, such a tool is readily available, and the vault can also be opened with other types of wrenches.  The parties agree that the lid Lanier stepped on had been previously removed to turn the water back on, by an unknown and unauthorized person, presumably a resident at that address whose water had been turned off for nonpayment of a bill.  This person failed to replace the lid properly, even though it appeared to be flush with the sidewalk.  When Lanier stepped on it, it moved out of its placement and her leg slipped into the vault beneath.  She suffered a torn

---

[1] Lanier passed away during the course of the litigation and Ramsey was substituted as the plaintiff in September 2022.

meniscus and severe pain. On the next day, July 10, 2017, an employee of LWC documented the incident and replaced the lid.

Lanier filed a personal injury complaint against LWC alleging negligence. During discovery, LWC produced records showing, in the 18 months preceding Lanier's injury, that the water meter vault had been accessed by LWC personnel three times to shut off service due to nonpayment; January 27, 2016, June 10, 2016, and August 12, 2016. Documents also noted unauthorized people accessed the vault opening twice in that same time period. On May 9, 2016, an LWC employee observed the meter lid off the vault opening. On August 24, 2016, when a LWC employee returned to turn the water back on, after disconnecting for nonpayment on August 12, 2016, the employee noticed that the valve had already been opened.

Approximately ten months later, on June 27, 2017, LWC personnel visited the vault to shut off service once again for nonpayment. According to Greg Thielmeier, claims supervisor for LWC, this was the last visit by LWC personnel to the vault before the accident. Lanier's accident occurred eleven days later, on July 9, 2017. According to LWC, on the day of Lanier's accident, the water service had been illegally restored. Presumably, some unknown person had accessed the vault in the period between June 27, 2017, and July 9, 2017, to turn on the water.

LWC also produced water usage documentation for the address. It showed that between June 27, 2017, when the water was disconnected and July 9, 2017, the date of Lanier's accident, the water usage reading indicated little or no water usage.

LWC moved for summary judgment, arguing that there was no evidence that it had actual or constructive notice that the vault lid was unlocked or in an unsafe condition. Ramsey responded that LWC records showed that the water meter vault had been previously accessed by someone without authorization to turn on the water. She contended that the frequency of safety concerns at that location in the previous year made it foreseeable that a resident at that address might turn the water on again without authorization and leave the site in an unsafe condition.

The circuit court entered summary judgment in favor of LWC, agreeing with LWC that Ramsey had failed to show that LWC had actual or constructive notice that the vault lid was in an unsafe condition. Ramsey filed a motion to alter, amend, or vacate, which the circuit court denied. This appeal followed.

**STANDARD OF REVIEW**

In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any

material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); Kentucky Rules of Civil Procedure ("CR") 56.03. The trial court is required to view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "[A] party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482. "Not every issue of fact or conflicting inference presents a genuine issue of material fact that requires denial of a summary judgment motion." *Grass v. Akins*, 368 S.W.3d 150, 153 (Ky. App. 2012). "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

## ANALYSIS

"The elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) (citations omitted). Our case law has long imposed a specific duty on water companies regarding the maintenance of their water meters. A water company "has the right

to place its meters in or near the streets and sidewalks of the City, but it must maintain them in a reasonably safe condition for the safety of pedestrians and the traveling public." *Lutz v. Louisville Water Co.*, 291 Ky. 31, 163 S.W.2d 29, 30 (1942). That duty is breached if a water meter cover is left unsecured. *Carucci v. Northern Kentucky Water District*, 657 S.W.3d 924, 928 (Ky. App. 2022).

For a water company to be found liable for injuries stemming from an unsecured water meter cover, however, there must be evidence that the company had actual or constructive notice of the dangerous condition. *Id.* (citations omitted). "[T]he company's liability depends on whether it had any actual notice of the condition or whether the condition had existed for a sufficient length of time to charge it with constructive notice." *Louisville Water Co. v. Cook*, 430 S.W.2d 322, 324 (Ky. 1968). Unless it is proved that LWC "had knowledge of the defect or unless such knowledge can be imputed by the length of time the defect existed," LWC is not liable for Lanier's injury. *City of Elizabethtown v. Baker*, 373 S.W.2d 593, 595 (Ky. 1963). Ramsey concedes that LWC did not have actual notice that the lid had not been properly replaced. The sole issue on appeal, therefore, is whether there was evidence to charge LWC with constructive notice.

Under our case law, the type of evidence required to defeat a motion for summary judgment or a directed verdict on the issue of notice falls into two categories: 1) a direct report from a member of the public to the water company

about a loose meter cover; or 2) the unsafe condition of the meter has existed for a sufficient length of time for members of the public to observe it. In *Lutz*, *supra*, for example, a teenager fell into a water meter vault with a loose cap. A witness testified that he was in the vicinity of the water meter eight days before, and observed a child playing with the lid, which was loose. After replacing the lid with his foot, the witness called the water company and informed the person he spoke to that the cap was unlocked. The appellate court held that the witness's testimony could constitute evidence of substance and probative value on the question of the water company's notice. *Lutz*, 163 S.W.2d at 31.

In *Cook*, *supra*, the plaintiff was injured on March 18, 1963, when she stepped on a water meter lid, and it tilted. Witnesses testified that the meter cover was loose as early as March 9, 1963; another witness saw the cover completely off about three days before the accident and half off on the day of the accident. No one from the water company had visited the meter between February 8 and March 18, 1963. The appellate court held that the evidence was sufficient to allow the jury to decide whether the unsafe condition had existed for a sufficient length of time to charge the water company with constructive notice. *Cook*, 430 S.W.2d at 324.

By contrast, in *Baker*, *supra*, after the plaintiff was injured stepping on a loose meter lid, two witnesses testified at trial that they passed by the meter

cover many times each day and they had never seen anything wrong with it. Although the plaintiff testified that the meter cover was tilted, the evidence showed that the actual cause of the cover being dislodged was that the nut ordinarily securing the cover had been removed. There was no proof of how long it had been missing nor could anyone contend it could have been missing earlier than the date of the plaintiff's injury. *Baker*, 373 S.W.2d at 595. Consequently, the appellate court directed that the plaintiff's complaint be dismissed.

More recently, in *Carrucci*, *supra*, the evidence showed that the water district had shut off the water at the meter in January 2015 when a customer moved out. In May 2015, the water district became aware of unauthorized water use at that location and sent an employee to the meter for an inspection, which involved removing the vault lid, turning off the water valve, and making sure it was locked. The plaintiff was injured about a month later when she stepped on the lid, which was then loose.

Even though there was a lack of evidence of direct reports to the water district about the loose meter cover (as in *Lutz*) or evidence of anyone observing the meter cover was loose (as in *Cook*) the plaintiff argued that the district was nonetheless placed on constructive notice based on its awareness of unauthorized water use at that location in May 2015. A panel of this Court disagreed, because "unauthorized water use, by itself, does not represent a dangerous condition to

-8-

passersby[,]" and noted that the water district promptly sent an employee to the meter after detecting the unauthorized water use. *Carucci*, 657 S.W.3d at 928. This employee was the last water district representative to access the meter before the plaintiff's accident a few weeks later. *Id*. at 929. Similarly, in the case *sub judice*, an employee of LWC had turned off the water at the vault and secured the lid only twelve days before Lanier's accident. The hypothesis that some unknown individual might access the vault thereafter to switch the water back on does not constitute evidence of constructive notice.

Ramsey argues that evidence of when, or for how long, the meter vault lid was left in an unsecured condition is not necessary to show constructive notice. She contends that the record of unauthorized access from the year prior to the accident was sufficient to show that LWC was placed on constructive notice and that the company should have anticipated and mitigated the risk by installing additional safety mechanisms to secure the meter vault. She asserts that under *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901, 911 (Ky. 2013), *as corrected* (Nov. 25, 2013), the existence of a duty is dependent on the foreseeability of the risk of harm and that foreseeability is a question of fact for the jury, not the trial court, to determine.

The determination that a dangerous condition is "open and obvious" may absolve a premises owner of liability unless it can be shown that the owner

-9-

should have anticipated or foreseen the harm resulting from the condition, despite its obviousness. *Id.* Prior to *Shelton*, the foreseeability of the harm in open-and-obvious cases was treated as part of the question of legal duty to be decided by the trial court. "[B]ecause the question of duty is a question of law, we have also treated the foreseeability of harm as a question of law." *Id.* at 912. Recognizing that the foreseeability of harm is a highly fact-specific inquiry, *Shelton* held that it should not be decided by the trial court but by the jury when it determines "what [is] required by the defendant in fulfilling the applicable standard of care[,]" that is, in determining whether the defendant breached its duty to the plaintiff. *Id.* at 914.

But the Kentucky Supreme Court has expressly limited *Shelton*'s "cabining of foreseeability to a breach analysis . . . only to open-and-obvious cases." *Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 28 (Ky. 2023), *reh'g denied* (Jun. 15, 2023) (expressly rejecting the application of *Shelton* in premises liability cases involving a third-party criminal act). There was no claim in Lanier's case that the hazard presented by the unsecured condition of the meter vault lid was "open and obvious" and therefore *Shelton* does not apply. Under the applicable precedent, evidence of notice, either actual or constructive, is required before this type of negligence action against a water company can proceed to the jury.

The record shows that an employee of LWC visited the vault on June 27, 2017, prior to Lanier's accident, to turn off the water. There is no allegation

-10-

that this employee improperly replaced the lid or otherwise left it in an unsecured condition. There is no evidence that anyone reported a loose lid, observed a loose lid, or even that there was any increase in water usage at that address during the twelve days that followed. There was evidence that unauthorized individuals had moved the meter lid outside its frame at some time between January 27, 2016, and May 9, 2016, and had accessed the vault at some time between August 12, 2016, and August 24, 2016, to illegally restart water service. As LWC has pointed out, this was the only instance prior to Lanier's accident that LWC shut off service to that address only to have the vault illegally accessed later to restore service, and the evidence does not show that the meter lid was discovered in anything but its proper position on that occasion. These facts do not create a pattern that would put LWC on constructive notice that the lid was not secured, nor would it impose a duty on LWC to adopt additional safety measures. We agree with the circuit court that Ramsey offered no evidence regarding when the meter lid became unsecured, so it is impossible to show that LWC actually had notice of a dangerous condition.

## **CONCLUSION**

For the foregoing reasons, the Jefferson Circuit Court's grant of summary judgment to LWC is affirmed.

ALL CONCUR.

-11-

BRIEF FOR APPELLANT:

Chad A. Graham
Louisville, Kentucky

BRIEF FOR APPELLEE:

John H. Dwyer, Jr.
Katherine E. Tapp
Louisville, Kentucky